IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No 13-cv-01726-RBJ-BNB

RUBEN ARAGON,

Plaintiff,

v.

ROSSKAMM ERLANGER,
GUY EDMONDS,
MITCHELL BUTTERFIELD,
RHONDA FUNSTON, and
JEFFREY HILL,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
AND ORDER**

_____

This matter arises on the following motions:

(1)  The **Partial Motion to Dismiss** filed by defendants Edmonds, Butterfield, Funston,

and Hill [Doc. #30] (the "DOC Defendants' Motion"); and

(2)  The **Motion to Dismiss** filed by defendant Erlanger[1] [Doc. #34] ("Erlanger's

Motion").

I respectfully RECOMMEND that the motions be GRANTED IN PART and DENIED

IN PART.

_____

[1]Defendant Erlanger states that his first name is Hillel, not Rosskamm.  *Erlanger Motion*,
p. 1.

# I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has

wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case.  The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC") at the Arkansas Valley Correctional Facility.  He filed his Amended Prisoner Complaint on August 26, 2013 [Doc. #9] (the "Complaint").  At all times pertinent to the allegations of the Complaint, the plaintiff was housed at the Buena Vista Correctional Facility ("BVCF").  *Complaint*, p. 2, ¶ 1.  The Complaint contains the following allegations:

1.   The plaintiff is "a Messianic Jewish believer."  Id. at p. 4.  Those who practice the Messianic faith adhere to the kosher dietary laws of the Torah and implement them into their "everyday walk of life" as a part of their "faith practice."  Id. at p. 7.

2.   While employed at the BVCF kitchen in July 2011, the plaintiff noticed various kosher and health care violations (the "kitchen violations").  He noticed that none of the kitchen staff knew anything about kosher rules.  The kitchen was operated differently depending on which meal coordinator was in charge.  Id. at pp. 4-5.

3.   The plaintiff brought the kitchen violations to the attention of the kitchen staff and was told that defendant Sergeant Butterfield was "in charge of everything kosher and food related."  The plaintiff brought the kitchen violations to the attention of Butterfield.  Butterfield stated that he was not doing anything wrong.  Id. at p. 5.

4.   The can opener, microwave, food storage containers, and hot boxes were being used for kosher and non-kosher foods..  Id.

5.   The plaintiff began filing grievances in an attempt to resolve the kitchen violations. Some of his complaints were corrected for a week or two, but then the violations resumed.  Id.

6.   The plaintiff brought the kitchen violations to the attention of defendant Lieutenant Funston (the religious coordinator), defendant Lieutenant Hill (the kitchen supervisor), and defendant Captain Edmonds (Hill's supervisor).  He did not see any results.  Id.

7.   The plaintiff requested a meeting with the rabbi who inspects the kosher kitchen, but his requests were ignored.  He was finally granted a meeting with defendants Rabbi Erlanger and Captain Edmonds on June 20, 2012.  It was agreed by these defendants that the kitchen violations had occurred and that changes would be made.  Id. at pp. 5-6.

8.   Some of the kitchen violations were corrected for a short while.  It was obvious that the kitchen staff was not trained in keeping kosher rules.  The kitchen staff claimed they were following Butterfield's orders.  Id. at p. 6.

9.   In April 2012, the plaintiff noticed that no special preparation or cleaning was being done to prepare for Passover meals.  The religious celebration was held a day late.  Kosher meals for the general population were being prepared in the same kosher kitchen area as the Passover meals which is a violation of the "kosher and dietary rules."  Id.

4

10.    During his employment in the BVCF kitchen, the plaintiff was informed by several "kosher cooks" of violations that the defendants told them "to ignore and if asked by health inspectors during the State Health Inspections to lie about such actions."  Id. at pp. 6-7.

11.    During the course of all of his complaints and grievances, the plaintiff's kosher meals "began being tampered with."  He received half servings, stale bread, and "a soap taste" in his fruit cups.  He told Lieutenant Hill about the tampering, but he did not see any results.  Id. at p. 7.

12.    After many complaints and grievances, tampering with his kosher trays, and failure to correct violations, the plaintiff suffered a substantial burden on his religious practice, "putting emotional stress and pressure on me to modify my behavior in participating in my kosher meals. [I]t became more than just an inconvenience, I was forced to remove myself from the kosher diet program in fear for my health."  Id.

13.    Claim One is brought against Rabbi Erlanger.  The plaintiff alleges that from April 2011 to August 2013, Rabbi Erlanger inspected, approved, and permitted Edmonds, Hill, and Butterfield to prepare the plaintiff's Passover meals and kosher meals in a kitchen with no special preparation, cleaning of the area, and/or cleaning of the equipment to meet kosher requirements.  Id. at p. 9.  Rabbi Erlanger certified the kitchen without a hot water source and proper sinks "in which to properly wash, clean and sanitize kosher fruits, vegetables and utencils [sic] and equipment."  His "failure to properly inspect and disapprove of how Mr. Edmonds, Mr. Hill, and Mr. Butterfield prepared my . . . (Passover Meals) and (Messianic Jewish Diets), forced me to get off the kosher diets, therefore causing me to modify my religious beliefs."  Id. at p. 10.

5

14.   Claim Two is asserted against defendant Edmonds, the supervisor over all staff in the BVCF kitchen.  The plaintiff alleges that he complained to Edmonds about the kosher kitchen violations in April 2012.  From March 2012 to August 2013, Edmonds authorized kitchen staff to prepare Passover meals in the kosher kitchen where there was no special preparation, cleaning of the area, and/or cleaning of the equipment to meet kosher requirements.  Edmonds authorized the use of a janitorial sink for the cleaning of kosher foods, utensils, and equipment.  He failed to supervise and train his staff how to clean a kosher kitchen and prepare kosher meals to meet kosher Passover and dietary requirements.  This failure forced the plaintiff to modify his religious beliefs and quit eating kosher meals.  Id. at pp. 11-12.

15.   Claim Three is brought against Sergeant Butterfield.  The plaintiff alleges that he complained to Butterfield about the kitchen violations as early as August 2011.  From April 2012 to August 2013, Butterfield authorized staff to prepare the plaintiff's Passover meals in the kosher kitchen with no special preparation, cleaning of the area, and/or cleaning of the equipment to meet kosher requirements.  Butterfield authorized the use of the janitorial sink for kosher use and authorized nonkosher foods for consumption in kosher meals.  Butterfield's failure to supervise and train kitchen staff on how to prepare kosher meals and clean a kosher kitchen to meet kosher Passover and dietary requirements caused the plaintiff to modify his religious beliefs and quit his kitchen job.  Id. at pp. 13-14.

16.   Claim Four is against Lieutenant Funston, the BVCF Religious Coordinator.  The plaintiff alleges that he sent Funston a request to be placed on the Messianic Jewish Passover list on March 24, 2012.  Funston denied his request to "properly participate" in Passover.  Funston deliberately "made sure" the plaintiff  missed Passover.  Funston caused the plaintiff to modify

his religious behavior because she did not allow him to enjoy Passover.  Funston was aware of

the kitchen violations through his grievances.  "[A]s supervisor over Religious affairs, she failed

to take any steps to remedy the violation."  Id. at pp. 15-16.

17.   Claim Five is against defendant Lieutenant Hill, the "supervisor over A.M. meal

coordinating."  The plaintiff alleges that he complained to Hill about the kosher violations and

about the tampering with his meals, both in person and in writing.  On March 29, 2012, Hill

reviewed the plaintiff's grievance and promised that all violations would be corrected.  From

April 2012 to August 2013, Hill authorized staff to prepare the plaintiff's Passover meals in the

kosher kitchen without special preparation, cleaning of the area, and/or cleaning of the

equipment to meet kosher requirements.  Hill's failure to supervise and train his staff on how to

prepare kosher meals and clean a kosher kitchen caused the plaintiff to modify his religious

beliefs and quit eating kosher meals.  Id. at p. 17.

18.   The plaintiff asserts that the defendants' failure to follow kosher rules violated

RLUIPA and the plaintiff's First and Fourteenth Amendment rights.[2]  Id.

The plaintiff seeks a declaration that the defendants violated RLUIPA and the

constitution.  He also seeks an injunction requiring that the BVCF kosher kitchen be brought into

compliance with kosher rules.  Finally, he seeks compensatory and punitive damages.[3]

---

[2]The First Amendment applies to the states through the Fourteenth Amendment.  44
Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 489 n.1 (1996).

[3]Any other claims the plaintiff may be attempting to assert are unintelligible and will not
be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he
broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging
sufficient facts on which a recognized legal claim could be based").

## III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

### A.  Whether Erlanger Is a State Employee

Defendant Rabbi Erlanger asserts that he is not a state employee.  *Erlanger Motion*, p. 3.

However, the plaintiff alleges that Erlanger "was employed with the State at the time of the

alleged claims."  *Complaint*, p. 2, ¶ 2.  Providing the Complaint a liberal construction, as I must,

the plaintiff has sufficiently alleged that Erlanger is a state actor for purposes of RLUIPA and 42

U.S.C. § 1983.

### B.  Official Capacity Claims: Eleventh Amendment Immunity

The defendants assert that they are entitled to Eleventh Amendment immunity.  *DOC*

*Defendants' Motion*, p. 3; *Erlanger Motion*, p. 3.  Eleventh Amendment immunity "constitutes a

bar to the exercise of federal subject matter jurisdiction."  Fent v. Okla. Water Res. Bd., 235 F.3d

553, 559 (10th Cir. 2000) (emphasis omitted).  The defendants' assertion of Eleventh Amendment

immunity is a facial challenge to the Complaint's allegations.  Therefore, I accept the allegations

of the Complaint as true.  Holt, 46 F.3d at 1003.

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their

official capacities as to retroactive monetary relief, but not as to prospective injunctive relief.

Pennhurst, 465 U.S. at 102-03,105-06.  Eleventh Amendment immunity applies to suits arising

under 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).

The plaintiff is suing the defendants Erlanger, Edmonds, Butterfield, and Funston in both

their official and individual capacities.  *Complaint*, p. 1 (Caption).  He is suing defendant Hill in

his official capacity only.  Id.  The plaintiff alleges that the defendants are employed by the

Colorado Department of Corrections (the "DOC").  The DOC is an agency or subdivision of the

State of Colorado.  Consequently, a suit against the defendants in their official capacities is a suit

against the state.  Therefore, the Motion should be granted to the extent it seeks dismissal of all

claims against defendants in their official capacities for retroactive monetary relief.

In addition, the plaintiff has not stated a plausible claim against any of the defendants in

their official capacities.  To establish a claim in an official capacity suit, a plaintiff must show

that "the entity's policy or custom . . . played a part in the violation of federal law."  Kentucky v.

Graham, 473 U.S. 159, 166 (1985).   The plaintiff does not provide any specific factual

allegations to show that a policy or custom of BVCF caused the alleged constitutional and

statutory violations.  The claims against the defendants in their official capacities for prospective

injunctive relief should also be dismissed.

**B.   Claims for Declaratory and Injunctive Relief**

The plaintiff's claims for declaratory and injunctive relief should also be dismissed

because they are moot.  The Tenth Circuit Court of Appeals has stated:

> When a prisoner files suit against prison officials who work in the
> institution in which he is incarcerated, seeking declaratory and
> injunctive relief on the basis of alleged wrongful conduct by those
> officials, and then that prisoner is subsequently transferred to
> another prison or released from the prison system, courts are
> presented with a question of possible mootness.  Where the

prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief.  Because a prisoner's transfer or release signals the end of the alleged deprivation of his constitutional rights, an entry of equitable relief in his favor would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him.

However, where a prisoner brings a lawsuit challenging policies that apply in a generally uniform fashion throughout a prison system, courts have been disinclined to conclude that the prisoner's declaratory or injunctive claims are moot, even after he has been transferred to another prison in that system.  Critically, in determining that the transferred prisoners' claims for declaratory or injunctive relief were not moot, these courts have focused upon the fact that the prisoners had sued defendants who were actually situated to effectuate any prospective relief that the courts might see fit to grant— viz., that the prisoners had sued the director of the prison system or the prison system itself.  Conversely, these cases indicate that a transferred prisoner's challenge to system-wide prison policies is moot where he seeks equitable relief and only sues prison officials at the transferor institution—that is, the institution where he was formerly incarcerated.

Jordan v. Sosa, 654 F.3d 1012, 1027-29 (10th Cir. 2011) (internal quotations and citations omitted).

The plaintiff is no longer incarcerated at BVCF; he now is incarcerated at the Arkansas Valley Correctional Facility.  Therefore, he is no longer incarcerated at the defendants' place of employment.  Any prospective declaratory or injunctive relief the court may order would have no effect on the defendants' behavior toward the plaintiff.  Therefore, the claims for declaratory and injunctive relief should be dismissed as moot.

10

### D.  RLUIPA Claims

The defendants assert that the plaintiff's RLUIPA claims for damages fail as a matter of law.  *DOC Defendants' Motion*, p. 6; *Erlanger Motion*, p. 5.  RLUIPA provides that an individual may assert a violation of the statute "in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).  This provision is interpreted as "permit[ting] cases against a government entity, but not against an individual officer, except perhaps in his or her official capacity."  Boles v. Neet, 402 F.Supp.2d 1237, 1240 (D.Colo. 2005); Palecek v. Zavares, Civil Action 09-cv-01351-ZLW-CBS, 2010 WL 3307489 at *6 (D.Colo. July 1, 2010) (listing cases).  The Tenth Circuit has recognized that "[s]everal circuit courts have held, under the principles of sovereign (Eleventh Amendment) immunity, that money damages are not available for official-capacity RLUIPA claims."  Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311-12 (10th Cir. 2010).  Although the Tenth Circuit did not decide the issue, district courts in this circuit have determined that the Eleventh Amendment bars RLUIPA claims for monetary damages against defendants sued in their official capacities.  Palecek, 2010 WL 3307489 at *6 (listing cases).

Persuaded by these cases, I find that the plaintiff's RLUIPA claims should be dismissed against the defendants in their individual capacities, and the RLUIPA claims against them in their official capacities should be dismissed insofar as they seek monetary damages.  In addition, because the plaintiff's claims for declaratory and injunctive relief are moot, the plaintiff's RLUIPA claims should be dismissed in their entirety.  Finally, because there are no remaining claims against defendant Hill (sued only in his official capacity), he should be dismissed from this action.

### E.  Individual Capacity Claims

The defendants assert that they are entitled to qualified immunity.  *DOC Defendants'*

*Motion*, p. 8; *Erlanger Motion*, p. 6.  Qualified immunity shields government officials sued in

their individual capacities from liability for civil damages provided that their conduct when

committed did not violate "clearly established statutory or constitutional rights of which a

reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In

order for a right to be "clearly established" for purposes of assessing entitlement to qualified

immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640

(1987).

When analyzing the issue of qualified immunity, I  consider two factors.  I must

determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional

right.  In addition, I must inquire whether the right was clearly established at the time of the

violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas,

172 F.3d 736, 745 (10th Cir. 1999).[4]

### 1.  Personal Participation

The defendants assert that the claims against them must be dismissed because the

plaintiff does not allege that they personally participated in any of the alleged violations of his

constitutional or federal statutory rights.  *DOC Defendants' Motion*, p. 4; *Erlanger Motion*, p. 4.

---

[4]The order in which I may consider these factors is discretionary.  Pearson v. Callahan,
555 U.S.223, 236 (2009).  However, both prongs must be satisfied.  Herrera v. City of
Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability. Personal liability under § 1983 must be based on personal involvement in the alleged constitutional violation."   Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011) (internal quotations and citation omitted).

"Section 1983 does not authorize liability under a theory of respondeat superior." Id. at 1164.  In order to hold a supervisor liable under section 1983, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." Id. (internal quotations and citation omitted).  Without a showing of personal involvement in the alleged constitutional violation, liability will not be imposed on a supervisory official. Id. at 1163.

### a.   Claim One: Rabbi Erlanger

The plaintiff alleges that he met with Rabbi Erlanger and Captain Edmonds on June 20, 2012, and that Erlanger promised that the violations would be corrected. Id. at p. 6.  He alleges that from April 2011 to August 2013, Rabbi Erlanger inspected and approved preparation of the plaintiff's Passover meals and kosher meals in a kitchen with no special preparation, cleaning of the area, and/or cleaning of the equipment to meet kosher requirements, and that he certified the kitchen without a hot water source and proper sinks "in which to properly wash, clean and sanitize kosher fruits, vegetables and utencils [sic] and equipment. Id. at p. 9.  These allegations are sufficient to allege personal participation in the alleged constitutional violation.

### b.   Claim Two: Captain Edmonds

The plaintiff alleges that Captain Edmonds is the supervisor over all staff in the BVCF kitchen.  *Complaint*, p. 11.  He alleges that he complained to Edmonds, citing Exhibit C-2 (a grievance).  Id.  He alleges that he met with Rabbi Erlanger and Captain Edmonds on June 20, 2012; Edmonds agreed that the violations had been taking place; and Edmonds promised that the violations would be corrected.  Id. at p. 6.  As with defendants Butterfiled and Hill, he alleges that Edmonds authorized kitchen staff to prepare Passover meals in the kosher kitchen where there was no special preparation, cleaning of the area, and/or cleaning of the equipment to meet kosher requirements.  He further alleges that Edmonds authorized the use of a janitorial sink for the cleaning of kosher foods, utensils, and equipment and that he failed to supervise and train his staff how to clean a kosher kitchen and prepare kosher meals to meet kosher Passover and dietary requirements.  The plaintiff does not allege any specific facts to show that Edmonds was personally involved in the kitchen violations or the tampering, or that he possessed any responsibility for the continued operation of a policy that caused violations of the plaintiff's First Amendment rights.  Claim Two and defendant Edmonds should be dismissed.

### c.   Claim Three: Sergeant Butterfield

The plaintiff alleges that Sergeant Butterfield was "in charge of everything kosher and food related"; the plaintiff brought the violations to the attention of Butterfield; and Butterfield stated that he was not doing anything wrong.  He further alleges that it was obvious that the kitchen staff was not trained in keeping kosher rules and that staff claimed they were following Butterfield's orders.  Finally, he alleges that from April 2012 to August 2013, Butterfield authorized staff to prepare the plaintiff's Passover meals in the kosher kitchen with no special

preparation, cleaning of the area, and/or cleaning of the equipment to meet kosher requirements, and  Butterfield authorized the use of the janitorial sink for kosher use and authorized nonkosher foods for consumption in kosher meals.  These allegations are sufficient to state a plausible claim that Butterfield ordered the alleged violations and, therefore, personally participated in the alleged violations.

### d.  Claim Four: Lieutenant Funston

The plaintiff alleges that Lieutenant Funston is the Religious Coordinator at BVCF; he requested that she place him on the Passover list; she denied the request; and she "deliberately made sure" that he missed Passover.  The plaintiff has sufficiently alleged that Lieutenant Funston personally participated in causing the plaintiff to miss Passover.  The plaintiff further alleges that Funston was "made aware of the violations in the kosher kitchen" in the plaintiff's grievance and "failed to take any steps to remedy the violation."  *Complaint*, p. 16.  The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009).  The allegations against Lieutenant Funson regarding the alleged violations in the kosher kitchen should be dismissed pursuant to Gallagher.

### 2.  PLRA Limitation on Damages

The defendants assert that the plaintiff's claims for compensatory damages are limited by the Prison Litigation Reform Act ("PLRA").  *DOC Defendants' Motion*, p. 6.  The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted.  Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion).  Although section 1997e(e) bars recovery of compensatory damages for failure to allege physical injury, it does not bar recovery of punitive damages or declaratory or injunctive relief.  Id., at 881; Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

The plaintiff does not allege that he suffered from any physical injuries.  Therefore, the plaintiff's claims are barred to the extent they seek compensatory damages.

### 3.  Punitive Damages

The defendants assert that the plaintiff's request for punitive damages should be denied because he has failed to allege facts to show that the defendants knew they were violating his constitutional rights or that they acted with callous indifference as to whether their actions were unconstitutional.  *DOC Defendants' Motion*, p. 7.  Punitive damages are available in an action under section 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 35 (1983).  I decline to make this determination on a motion to dismiss, particularly where (as discussed below) the defendants have not addressed the plaintiff's First Amendment claims.  The DOC Defendants' Motion should be denied as premature insofar as its seeks dismissal of the plaintiff's claim for punitive damages.

### 4.  First Amendment Claims

The defendants do not provide any meaningful discussion of the plaintiff's claims for violation of his First Amendment right to free exercise of religion.  Therefore, I make no recommendation regarding the merits of the plaintiff's First Amendment claims against the remaining defendants.

## IV.  CONCLUSION

I respectfully RECOMMEND[5] that the Partial Motion to Dismiss filed by defendants Edmonds, Butterfield, Funston, and Hill [Doc. #30] and the Motion to Dismiss filed by defendant Erlanger [Doc. #34] be GRANTED IN PART and DENIED IN PART:

(1)   GRANTED to the extent they seek dismissal of all claims against defendants in their official capacities;

(2)   GRANTED insofar as they seek to dismiss the RLUIPA claims;

(3)   GRANTED to the extent they seek dismissal of Claim Two against defendant Edmonds; Claim Four against defendant Funston for the kitchen violations; and Claim Five against defendant Hill;

---

[5]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

(4)   DENIED insofar as they seek dismissal of Claim One against defendant Erlanger; Claim Four against defendant Funston for causing the plaintiff to miss Passover; and Claim Three against defendant Butterfield;

(5)   GRANTED insofar as they seek dismissal of the plaintiff's request for compensatory damages as barred by the Prison Litigation Reform Act; and

(10)   DENIED as premature insofar as they seek dismissal of the plaintiff's request for punitive damages.

I further RECOMMEND that the plaintiff's claims for declaratory and injunctive relief be dismissed as moot.

IT IS ORDERED that the Clerk of the Court shall change the docket sheet to show the first name of defendant Erlanger as Hillel.

Dated April 30, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge