IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01726-RBJ-BNB

RUBEN ARAGON,
Plaintiff,

v.

ROSSKAMM ERLANGER,
MITCHELL BUTTERFIELD, and
RHONDA FUNSTON,

Defendants.

# MOTION FOR SUMMARY JUDGMENT

Defendants Butterfield and Funston, through their counsel, the Colorado Attorney General, hereby submit the following Motion for Summary Judgment. In Support Therefore, Defendants state as follows:

## NATURE OF THE CASE

Plaintiff is a *pro se* prison inmate who has brought this action pursuant to 42 U.S.C. § 1983 asserting corrections officers have violated his civil rights. Doc. 9. At all times petinent to the allegations made in Plaintiff's Amended Complaint, Plaintiff was housed at the Buena Vista Correctional Facility. Doc. 9, p. 2. After the Court's ruling on the motion to dismiss, there are two remaining claims again Defendants Butterfield and Funston. Doc. 55.

Specifically, Plaintiff's third claim is brought against Defendant Butterfield. Plaintiff alleges that he complained to Butterfield about the kitchen violations as early as August 2011. From April 2012 to August 2013, Plaintiff alleges that Butterfield authorized staff to prepare the Plaintiff's Passover meals in the kosher area with no special preparation, cleaning of the area,

and/or cleaning of the equipment to meet kosher requirements. Additionally, Plaintiff alleges that Butterfield authorized the use of a non-kosher sink for kosher use. Finally, Plaintiff alleges that Butterfield's failure to supervise and train kitchen staff on how to prepare kosher meails and clean a kosher kitchen to meet kosher Passover and dietary requirements.

As to Defendant Funston, the only remaining claim against her relates to Plaintiff's allegations that he sent Funston a request to be placed on the Messianic Jewish Passover list on March 24, 2012 and she denied his request.

## STATEMENT OF THE FACTS

1. Plaintiff was incarcerated at the Buena Vista Correctional Facility (BVCF). Doc. 9, p. 2. He is currently incarcerated at the Arkansas Valley Correctional Facility, a different prison.

2. Defendants Butterfield and Funston are employees of the Colorado Department of Corrections and are currently employees of the Buena Vista Correctional Facility. *See* Exhibit A-1, Affidavit of J. Mitchell Butterfield, ¶ 2; Exhibit A-2, Affidavit of Rhonda Funston, ¶ 2.

### A. J. Mitchell Butterfield.

3. Butterfield is the Food Service Commisary and Purchasing Supervisor at the BVCF. Exhibit A-1, ¶ 2.

4. In this capacity, Butterfield's general duties and responsibilities include the purchasing of food for the entire Buena Vista Correctional Complex, including the kosher food. He also oversees the purchasing, preparation, and delivery of the kosher area and further assists with the facility's budget. *Id*. at ¶ 3.

5. On February 29, 2012, Plaintiff requested that his religious diet be cancelled, effective immediately. *Id*. at ¶ 6.

6. Plaintiff did not reinstate his kosher diet until February, 2014. Exhibit A-3.

7. While Butterfield manages the kosher area and orders the kosher food for the facility, he is not personally involved in the preparation of kosher meals. Exhibit A-1, ¶ 10.

8. However, the kosher diet at the BVCF, as in all facilities, is prepared in kosher meal preparation areas in accordance with the CDOC policies, guidelines, and menus for kosher food. These guidelines, policies, and menus were developed in consultation with Scroll K, a non-profit agency that provides consulting services to the CDOC concerning the kosher diet. at ¶ 13.

9. Scroll K helped the CDOC develop their kosher meal program. The rabbis of Scroll K attend meetings at CDOC headquarters to discuss general policy concerning the CDOC's kosher food program, and they review the CDOC's kosher guidelines and menus. *Id*.

10. Kosher food at the Buena Vista Correctional Facility, as in all facilities, is prepared in kosher meal preparation areas. The Buena Vista Correctional Facility's kosher preparation area is well set up and meets Scroll K guidelines. *Id*.

11. Most of the kosher food is sent to the facility and prepared under guidelines that minimize the need for cooking. Exhibit A-1, Attachment 2, p. 8.

12. To that end, all of the kosher entrees are purchased and delivered as pre-pared entrees. Exhibit A-1, ¶ 11.

13. The food items are prepared in a room that is used for kosher food preparation. *Id*. at ¶ 10.

3

14. A rabbi from Scroll K conducts surprise inspections of the kitchens at the BVCF to ensure that the kosher food is prepared correctly. *Id*. at ¶ 14.

15. A rabbi from Scroll K conducted a surprise inspection of the BVCF's kitchen on November 13, 2012, February 6, 2013, June 5, 2013, and October 17, 2013, and found that the kosher food preparation was satisfactory. *Id*. at ¶ 15.

16. A written report follows all inspections and indicates whether Scroll K guidelines for kosher food preparation are being following at the facility. Exhibit A-1, Attachments 3-6. The reports also address any food preparation issues observed by the Rabbi or reported by inmates. *Id*.

17. In addition, if the inspecting rabbis see any mistakes, they inform appropriate Food Services personnel and advise them how to correct the mistake. *Id*.

18. In addition, the rabbis inspect the kosher food supplies, and check to ensure that all food that requires kosher certification is properly certified. *Id*. The rabbis also check to make sure that all cooking utensils and implements used to prepare the kosher meals are exclusively for kosher use. *Id*.

19. Rabbi Erlanger visited Buena Vista Correctional Facility's kitchen on November 13, 2012, February 6, 2013, June 5, 2013, and October 17, 2013, and concluded that Buena Vista Correctional Facility's kosher meal program was satisfactory. *Id*.

20. When the rabbis conduct inspections of the facilities, it is part of their procedure to speak to one or two inmates about the kosher diet provided at the facility, and to inquire about any issues or concerns they may have about the kosher diet. *Id*.

21.     In each of the reports, Rabbi Erlanger noted that he had spoken with at least one offender who was on the kosher diet at that time. When asked if he had any issues or complaints regarding the kosher diet at the facility, these offenders indicated that they were satisfied with the kosher diet.

22.     Rabbi Erlanger notes in each report that no other inmates or staff reported any concerns or complaints about the kosher diet service at the time of his visits. *Id*.

23.     Plaintiff also requested and participated in a meeting with Rabbi Erlanger on June 20, 2012 to discuss Plaintiff's questions and concerns. Exhibit A-1, ¶ 17.

24.     Rabbi Erlanger not only talked to Plaintiff, but also provided written answers to the questions posed by Plaintiff. *Id*. at ¶ 18.

25.     During the meeting, it was noted that Plaintiff had removed himself from the kosher diet "a while ago". Exhibit A-1, Attachement 7.

26.     It was also noted during the meeting, that Plaintiff stated that his Passover meals were fine. *Id*.

### B.     Rhonda Funston

27.     As the Volunteer Coordinator, Funston's responsibilities include processing all offenders' requests for faith change affiliation, religious diet changes, notifying offenders of upcoming holy day observances as well as processing requests made by offenders wanting to participate in their faith group's holy day observances. She also provides offenders with a monthly schedule for all faith group and volunteer programs. Exhibit A-2, Affidavit of Rhonda Funston, ¶ 3.

28. The Colorado Department of Corrections has a Passover 2012 guide which provides and overview of Passover and a calendar of events. *Id*. at ¶ 5.

29. The Passover 2012 guide also explains that "due to the length of time needed to order kosher and Passover foods, planning must begin a minimum of 120 days in advance." *Id*. at ¶ 6.

30. Thus, Jewish and Messianic Jewish inmates will be notified via sign up letter or other means approximately 90 business days prior to the start of Passover to sign up if they want to participate. *Id*. at ¶ 7.

31. Offenders who wanted to participate in the 2012 Passover, which was April, 2012 needed to sign up by November 30, 2011. *Id*. at ¶ 8.

32. The participation list was then submitted to Food Service Office at CDOC Headquarters no later than December 5, 2011. *Id*. at ¶ 9.

33. The participation list is then entered into the CDOC's computer system and then sent to the Volunteer Coordinator at each facility for review. *Id*. at ¶ 10.

34. On November 8, 2011, Plaintiff submitted an Offender Communication form to the Volunteer Coordinator at that time, requesting that he be placed on the list for Passover/Seder meals for 2012. *Id*. at ¶ 11.

35. Plaintiff, on December 5, 2011, was sent a response indicating that he has been placed on the list to participate in the Passover and Seder observances beginning on April 6. *Id*. at ¶ 12.

36. Plaintiff was placed on the participation list for the 2012 Passover and Seder observances. *Id*. at ¶ 13.

37. On April 3, 2012, Funston provided a special event proposal which outlined the times and locations the observance were to take place as well as the list of offenders who would be participating was distributed to all of the housing units at both facilities within the Buena Vista Correctional Complex as well as Master Control and Shift Commander. *Id*. at ¶ 14.

38. Plaintiff was on that list of those offenders who would be participating in the observances. *Id*.

39. Plaintiff had made a timely request to be placed on the participation list and in fact, was placed on the list. *Id*. at ¶ 15.

## STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2005); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc.v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The purpose of summary judgment is to determine whether trial is necessary. *White v. York Int'l. Corp.,* 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment must be granted if the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "Factual disputes that are irrelevant or

unnecessary will not be counted." *Id.* A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2005). Moreover, when the moving party does not bear the ultimate burden of persuasion at trial, the movant merely needs to show that there is a lack of evidence on any essential element of the non-movant's claim. *Celotex,* 477 U.S. at 325; *Bausman v. Interstate Brands Corp.,* 252 F.3d 1111, 1115 (10thCir. 2001). The burden then shifts to the non-movant to establish the existence of some evidence on every essential element of the claim. *Id.*

**ARGUMENT**

**I.     Plaintiff lacks standing to claim any alleged kosher violations between April 2012 and August 2013, as**

Article III of the Constitution limits the judicial power of the United States to the resolution of "cases and controversies." *Valley Forge v. Americans United*, 454 U.S. 464, 471

(1982). One of the elements of the "case or controversy" requirement is "standing".[1] "A court cannot reach the merits of a case unless it first satisfies itself that the plaintiff is a proper party to bring the suit and that the issues raised are justiciable." *Glover River Org. v. United States Dep't of Interior*, 675 F.2d 251, 253 (10th Cir. 1982). A court does not have jurisdiction to review a complaint where standing is absent. *Baca v. King*, 92 F.3d 1031, 1034-35 (10th Cir. 1996). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (U.S. 1992).

Because it is a jurisdictional question, the issue of standing may be raised at any time, even for the first time on appeal. *Baca v. King*, 92 F.3d at 1035. The parties may not confer jurisdiction upon the court by stipulation or by failure to object to lack of standing. *Citizens Concerned for Separation of Church and State v. Denver*, 628 F.2d 1289, 1295 (10th Cir. 1980), *cert. denied*, 452 U.S. 963 (1981).

Plaintiff has the burden of alleging and proving standing. *Lujan v. Defenders of Wildlife*, 504 U.S. at 561; *Baca v. King*, 92 F.3d at 1036. The complaint must allege:

> (1) The existence of an "injury in fact". This requires actual or threatened imminent injury, one that is "distinct and palpable" rather than abstract or conjectural, to a "concrete and particularized" legally protected interest.
>
> (2) The occurrence of the injury to the plaintiff himself rather than to someone else with whom the plaintiff shares a common interest.
>
> (3) The injury is "fairly traceable" to the defendant's actions rather than to some independent action of a third party who is not before the court.

---

[1] Other elements of the "case or controversy" equation include ripeness, mootness, and the "political question" doctrine.

> (4) It is "likely" rather than "speculative" that a favorable decision
> will redress the injury or remove the prospective harm.

*Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61.

The requirement of an "injury in fact" requires a plaintiff to show more than an interest in the subject matter of the complaint. *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-62. He must demonstrate an actual or "imminent" injury to his own interests. *Id.*, 504 U.S. at 563.

A person does not have standing to raise a claim which merely seeks to vindicate the public interest. *Lujan v. Defenders of Wildlife*, 504 U.S. at 562. A claim "raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Id.* at 573-74.

 An inmate's complaint must state specific facts connecting allegedly unconstitutional prison conditions with his own experiences at that prison. *Swoboda v. Dubach*, 992 F.2d 286, 289 (10th Cir. 1993). An inmate lacks standing to bring claims on behalf of other prisoners. *Id.*, 992 F.2d at 290. *See also Whitmore v. Arkansas*, 495 U.S. 149 (1990). The plaintiff must show that his alleged injury is "both real and immediate, not conjectural or hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983). The injury must be "distinct and palpable" rather than "abstract," "conjectural" or "hypothetical." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *reh'g denied*, 468 U.S. 1250 (1984).

Here, evidentiary record shows Plaintiff voluntarily cancelled his kosher diet on February 29, 2012. Exhibit A-1, ¶ 6. According to the cancellation request, Plaintiff had to wait for a

period of one year before he could request that his kosher diet be reinstated. Exhibit A-1, Attachment 1. Plaintiff did not reinstate his kosher diet until February, 2014. Exhibit A-3. Thus, because Plaintiff had cancelled his kosher diet and did not have it reinstated for approximately two years, he has no standing to assert alleged violations relating to the preparation of the kosher meals because he was not, and could not, receive the meals.

## II.   Plaintiff's First Amendment claims against Butterfield and Funston fails and Defendants are entitled to summary judgment.

### A.   Plaintiff fails to state a claim for damages the violation of his First Amendment rights.

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "It is well-settled that '[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). "Yet such protections are not without reasonable limitations." *Kay*, 500 F.3d at 1218. A prisoner's right to a diet consistent with his religious beliefs is clearly established in the Tenth Circuit. *Makin v. Colorado Dep't. of Corrs.*, 183 F.3d 1205, 1210 n. 4 (10th Cir. 1999). The right to a diet that complies with the kosher dietary requirements of the tenets of Orthodox Judaism is recognized in the Tenth Circuit. *Beerheide v. Suthers*, 286 F.3d 1179 (10th Cir. 2002). Kosher laws govern not only the ingredients (both animal and vegetable), but the source, storage, and preparation of those ingredients, and the service of meals. *Id.* at 1187.

In order to establish a constitutional violation of his right to free exercise of religion, the plaintiff bears the initial burden of demonstrating that the restriction substantially burdened his or her sincerely held religious beliefs. *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). The Supreme Court has defined a "substantial burden" in the context of the Free Exercise clause as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. Of Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). *See also Wares v. Simmons*, 524 F.Supp.2d 1313, 1320 n. 9 (D. Kan. 2007) (A "substantial burden" is one that (1) significantly inhibits or constrains a plaintiff's religious conduct or expression; (2) meaningfully curtails a plaintiff's ability to express adherence to his faith, or (3) denies the plaintiff reasonable opportunity to engage in fundamental religious activities."). A substantial burden must place more than an inconvenience upon religious exercise; the burden must be substantial and significantly interfere with a plaintiff's practice of religious beliefs. *Schnitzler v. Reisch*, 518 F. Supp. 2d 1098, 1104 (D.S.D. 2007). *See also Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004) (restriction is a substantial burden "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs."). *Cf. Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989) (noting that *O'Lone* found prison regulations valid in part because the prisoners were permitted to participate in other Muslim religious ceremonies).

> **1)     Plaintiff's claim regarding the allegedly inadequate
>             kosher diet fails due to lack of sincerity.**

The Free Exercise Clause mandates that prison authorities afford prisoners reasonable opportunities to exercise their sincerely held religious beliefs. *Hammons v. Saffle*, 348 F.3d 1250, 1254 (10th Cir. 2001). However, prison officials are not required to afford inmates opportunities to exercise their religious beliefs when they engage in conduct demonstrating the insincerity of those beliefs. For instance, an inmate may be taken off a religious diet if he deviates from it. *Brown-El v. Harris*, 26 F.3d 68, 69 (8th Cir. 1994).

Here, as noted above, the evidence shows Plaintiff voluntarily cancelled his kosher diet on February 29, 2012. Exhibit A-1, ¶ 6. According to the cancellation request, Plaintiff had to wait for a period of one year before he could request that his kosher diet be reinstated. Exhibit A-1, Attachment 1. Plaintiff did not reinstate his kosher diet until February, 2014. Exhibit A-3. The Third Circuit has held, "if a prisoner's request for a particular diet is not the result of sincerely held religious beliefs, the First Amendment imposes no obligation on the prison to honor that request, and there is no occasion to conduct the *Turner* inquiry." *Dehart v. Horn,* 227 F.3d 47, 52 (3d Cir. 2000). Defendants submit that Plaintiff fails to state a claim for damages based upon the allegedly inadequacies to the kosher food due to his lack of sincerity regarding consuming a kosher diet.

> **2)   In the alternative, the evidence does not show that the kosher food provided to offenders during the time period in questions was satisfactory.**

The evidentiary record here demonstrates that the kosher diet at the BVCF, as in all facilities, is prepared in kosher meal preparation areas in accordance with the CDOC policies, guidelines, and menus for kosher food. These guidelines, policies, and menus were developed in consultation with Scroll K, a non-profit agency that provides consulting services to the CDOC

13

concerning the kosher diet. Exhibit A-1, ¶ 13. Scroll K helped the CDOC develop their kosher meal program. The rabbis of Scroll K attend meetings at CDOC headquarters to discuss general policy concerning the CDOC's kosher food program, and they review the CDOC's kosher guidelines and menus. *Id*. Kosher food at the Buena Vista Correctional Facility, as in all facilities, is prepared in kosher meal preparation areas. The Buena Vista Correctional Facility's kosher preparation area is well set up and meets Scroll K guidelines. *Id*. Most of the kosher food is sent to the facility and prepared under guidelines that minimize the need for cooking. Exhibit A-1, Attachment 2, p. 8. To that end, all of the kosher entrees are purchased and delivered as pre-pared entrees. Exhibit A-1, ¶ 11.

A rabbi from Scroll K conducts surprise inspections of the kitchens at the BVCF to ensure that the kosher food is prepared correctly. *Id*. at ¶ 14. Rabbi Erlanger, a rabbi from Scroll K conducted a surprise inspection of the BVCF's kitchen on November 13, 2012, February 6, 2013, June 5, 2013, and October 17, 2013, and found that the kosher food preparation was satisfactory. *Id*. at ¶ 15. A written report follows all inspections and indicates whether Scroll K guidelines for kosher food preparation are being following at the facility. Exhibit A-1, Attachments 3-6. The reports also address any food preparation issues observed by the Rabbi or reported by inmates. *Id*. In addition, if the inspecting rabbis see any mistakes, they inform appropriate Food Services personnel and advise them how to correct the mistake. *Id*. In addition, the rabbis inspect the kosher food supplies, and check to ensure that all food that requires kosher certification is properly certified. *Id*. The rabbis also check to make sure that all cooking utensils and implements used to prepare the kosher meals are exclusively for kosher use. *Id*. Rabbi Erlanger visited Buena Vista Correctional Facility's kitchen on November 13, 2012,

February 6, 2013, June 5, 2013, and October 17, 2013, and concluded that Buena Vista Correctional Facility's kosher meal program was satisfactory. *Id*.

When the rabbis conduct inspections of the facilities, it is part of their procedure to speak to one or two inmates about the kosher diet provided at the facility, and to inquire about any issues or concerns they may have about the kosher diet. *Id*. In each of the reports, Rabbi Erlanger noted that he had spoken with at least one offender who was on the kosher diet at that time. When asked if he had any issues or complaints regarding the kosher diet at the facility, these offenders indicated that they were satisfied with the kosher diet. Rabbi Erlanger notes in each report that no other inmates or staff reported any concerns or complaints about the kosher diet service at the time of his visits. *Id*. Plaintiff also requested and participated in a meeting with Rabbi Erlanger on June 20, 2012 to discuss Plaintiff's questions and concerns. Exhibit A-1, ¶ 17. Rabbi Erlanger not only talked to Plaintiff, but also provided written answers to the questions posed by Plaintiff. *Id*. at ¶ 18. During the meeting, it was noted that Plaintiff had removed himself from the kosher diet "a while ago". Exhibit A-1, Attachement 7. It was also noted during the meeting, that Plaintiff stated that his Passover meals were fine. *Id*. Consequently, the evidence does not show that Plaintiff's religious rights were violated.

### 3) Plaintiff's claim against Funston fails.

As to Defendant Funston, the only remaining claim against her relates to Plaintiff's allegations that he sent Funston a request to be placed on the Messianic Jewish Passover list on March 24, 2012 and she denied his request.

As the Volunteer Coordinator, Funston's responsibilities include processing all offenders' requests for faith change affiliation, religious diet changes, notifying offenders of upcoming holy

15

day observances as well as processing requests made by offenders wanting to participate in their faith group's holy day observances. She also provides offenders with a monthly schedule for all faith group and volunteer programs. Exhibit A-2, ¶ 3. The Colorado Department of Corrections has a Passover 2012 guide which provides and overview of Passover and a calendar of events. *Id*. at ¶ 5. The Passover 2012 guide also explains that "due to the length of time needed to order kosher and Passover foods, <u>planning must begin a minimum of 120 days in advance.</u>" *Id*. at ¶ 6. Thus, Jewish and Messianic Jewish inmates will be notified via sign up letter or other means approximately 90 business days prior to the start of Passover to sign up if they want to participate. *Id*. at ¶ 7.

Offenders who wanted to participate in the 2012 Passover, which was April, 2012 needed to sign up by November 30, 2011. *Id*. at ¶ 8. The participation list was then submitted to Food Service Office at CDOC Headquarters no later than December 5, 2011. *Id*. at ¶ 9. The participation list is then entered into the CDOC's computer system and then sent to the Volunteer Coordinator at each facility for review. *Id*. at ¶ 10.

On November 8, 2011, Plaintiff submitted an Offender Communication form to the Volunteer Coordinator at that time, requesting that he be placed on the list for Passover/Seder meals for 2012. *Id*. at ¶ 11. Plaintiff, on December 5, 2011, was sent a response indicating that he has been placed on the list to participate in the Passover and Seder observances beginning on April 6. *Id*. at ¶ 12.

Plaintiff was placed on the participation list for the 2012 Passover and Seder observances. *Id*. at ¶ 13. On April 3, 2012, Funston provided a special event proposal which outlined the times and locations the observance were to take place as well as the list of offenders who would

be participating was distributed to all of the housing units at both facilities within the Buena Vista Correctional Complex as well as Master Control and Shift Commander. *Id*. at ¶ 14. Plaintiff was on that list of those offenders who would be participating in the observances. *Id*. Plaintiff had made a timely request to be placed on the participation list and in fact, was placed on the list. *Id*. at ¶ 15.

Thus, Plaintiff cannot maintain a claim against Funston and Funston is entitled to summary judgment.

### III.     Defendants are entitled to qualified immunity.

Defendants assert qualified immunity as to Plaintiff's claims for monetary damages against them in their individual capacities. Whether Defendants are entitled to qualified immunity is a legal question. *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 552 U.S. 1181 (2008). When a defendant asserts qualified immunity plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *Brosseau v. Haugen*, 543 U.S. 194, 198-99 (2004) *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). If "the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). *See also Wilder*, 490 F.3d at 813. For all of the reasons discussed herein, Plaintiff has failed to establish that any Defendant violated Plaintiff's clearly established constitutional rights. Accordingly, Defendants are entitled to qualified immunity. *Albright v. Rodriguez*, 51 F.3d at 1535.

## CONCLUSION

For the reasons set forth herein, summary judgment should be entered in favor of Defendants.

Respectfully submitted this 26th day of January, 2015.

JOHN W. SUTHERS
Attorney General

s/ Chris W. Alber
CHRIS W. ALBER
Assistant Attorney General
Colorado Department of Law
Civil Litigation and Employment Law Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203
Telephone: (720) 508-6612
Facsimile: (720) 508-6032

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2015, I electronically filed this Motion for Summary Judgment with the Clerk of Court using the CM/EFC system which will send notification of such filing to the following email addresses:

Robert Pitler
Pitler and Associates P.C.
10800 E. Bethany Drive, Suite 250
*Counsel for Hillel Erlanger*

Further, I certify that I have duly served the within Motion for Summary Judgment upon all parties herein by depositing copies of same in the United States mail, postage prepaid, at Denver, Colorado, this 26th day of January, 2015 addressed as follows:

Ruben Aragon, # 153477                  *Courtesy Copy*:
Arkansas Valley Correctional Facility   Keith Nordell, CDOC
12750 Highway 96 at Lane 13             Stephanie Gonzales, AVCF
Ordway, CO 81034

                                        s/ Mariah Cruz-Nanio