**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 2 8 2015

JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-01726 RBJ-NYW

Ruben Aragon,
Plaintiff,

vs.

HILLEL ERLANGER, et al.,
DEFENDANTS.

**PLAINTIFF'S RESPONSE/BRIEF IN OPPOSITION TO DEFENDANT
BUTTERFIELD AND FUNSTON'S "MOTION FOR SUMMARY JUDGMENT"**

## TABLE OF CONTENT

pages

Factual Background................................................1–3

Standard of Review..............................................3–4

Argument.......................................................4–19

    A. Claim four against defendant Funston for causing the
       Plaintiff to miss Passover requires that Summary
       Judgment be denied........................................4–5

    B. Claim three against defendant Butterfield for
       "order[ing]" and "personally participat[ing] in the
       alleged violation" requires that summary judgment be
       denied...................................................5–8

    C. Because defendant Butterfield and Fuston failed to
       request summary for the alleged kosher violations
       between August 2011 and April 2012 they waived any
       right to bring the claim.................................8–9

    D. Plaintiff does have standing to sue defendants for the
       time period between April 2012 and August 2013........9–12

    E. Plaintiff's complaint, his declarations, and the
       record evidence sufficiently states a claim for
       damages................................................12–14

    F. Defendants Funston and Butterfield are not entitled
       to Qualified Immunity..................................14–15

    G. Plaintiff's statement of disputed facts that preclude
       Summary Judgment and are genuine issues of material
       fact. Defendant's statement of facts are inaccurate
       and the following disputed facts prevent Summary
       Judgment.............................................16–19

Conclusion.......................................................19

**Authorites**

**Cases**                                                                                           **Pages**

Abdulhaseeb v. Calbone, 600 F.3d 1301, 210 U.S. App. Lexis 6861........13,15

Anderson v. Liberty Lobby, 477 U.S. 242, 248-49 (1986).....................4

Beerheide v. Suthers, 286 F.3d 1179, at 1187 (10th Cir.2002)...........10,15

Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir.2007).......................15

Carey v. Pipus, 435, U.S. 747, 754 (1978)................................12

Colotex Corp v. Garett, 477 U.S. 317, 322 (1986)..........................3

Henderson v. Inter-Chem Coal Co., Inc, 41 F.3d 567, 569 (10th Cir.1994)....3

Houston v. Nat'l Gen. Ins. Co., 817 F.2d 83, 85 (10th Cir.1987)...........4

Kay v. Bemis, 550 F.3d 1214, 1218 (10th Cir.2007)

(quoting O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987)...........14

Makin v. Colorado Dep't of Corr., 183 F.3d 1205,

1210 n.4 (10th Cir. 2002.................................................15

Mosier v. Maynard, 937 F.2d 1521, 1526 (10th Cir.1991)...................13

Quaker State Minit-Lube, Inc., v. Fireman's Fund Ins. Co.,
52 3d F.3d 1552, 1577 (10th Cir.1995).....................................4

Thomas v. Review Bd. of Indiana Employment Sec. Div., 450
U.S. 707, 718 (1981).....................................................15

United States v. Seeger 380 U.S. 163, 186 (1965)........................13

**Other Authorities**

**Exhibits:**   A through O.................................................

## Introduction

Mr. Ruben Aragon, the Plaintiff herein, pursuant to Fed. R. Civ. P. 56 respectfully submits his Response/Brief to Butterfield and Funston's motion for Summary Judgment, and ask that the same be denied.  Plaintiff also submits his Declaration in support thereof.  As grounds therefore Mr. Aragon asserts the following:

## I.   Factual Background

1).  the Plaintiff is currently incarcerated by the Colorado Department of Corrections (DOC) at the Arkansas VAlley Correctional Facility (AVCF). He filed his Amended complaint on August 26, 2013 [Doc.#9] (the complaint). At all times relevant to the allegations made in his complaint, the Plaintiff was housed at the Buena Vista Correctional Facility (BVCF). complaint, p.2 para.1.

2).  Plaintiff is a "Messianic Jewish Believer".  Id. at p.4, and those who practice the Messianic Faith adhere to the kosher dietary laws of the TORAH and implement them into their "every day walk of life" as part of their "faith practice"  Id. p.7.

3).  While employed at the BVCF kitchen in July 2011 the Plaintiff noticed various kosher and health care violations (the kosher kitchen violations).  He noticed that none of the kitchen staff knew anything about kosher rules, regulations or guidelines.  The kitchen was operated differently depending on which meal coordinator was in charge. Id. at pp.4-5.

4).  Plaintiff brought the constitutional violations to the attention of the kitchen staff and was told that defendant Sergeant Butterfield was "in charge of everything kosher related".  The Plaintiff brought the kitchen violations to the attention of Butterfield.  Butterfield stated that he was not doing anything wrong. Id. at p.5.  The can opener, microwave, food storage containers and hot boxes were being used for kosher and non kosher food.  Id.

5).  The Plaintiff began filing grievances in an attempt to resolve the kitchen violations.  Some of his complaints were corrected for a week or two, but then the violations resumed.  Id.

6).  Mr. Aragon brought the violations to the attention of lieutenant Hill (the kitchen supervisor), and Captain Edmonds (Hill's supervisor). He did not see any results.  Id.

7).  The Plaintiff requested a meeting with the Rabbi who inspects and certifies the kosher kitchen, but his requests were ignored.  He finally was granted a meeting with defendants Rabbi Erlanger and Captain Edmonds on June 20, 2012.  It was agreed by these defendants that the violations had occurred and that changes would be made.  See Exhibit H-4, Answer C, lines 3-5. also complaint at pp.5-6.

8).  Some of the kitchen violations were corrected for a short while. It was obvious that the kitchen staff was not trained in keeping kosher rules or guidelines.  The kitchen staff claimed they were following Butterfield's orders.  Id. at p.6.

2

9). During the Jewish Holy Days (Passover), the Plaintiff noticed that no special preparation or cleaning was being done to prepare for Passover meals. In April 2012, Funston attempted to hold the Passover a day late. Kosher meals for the general population were being prepared in the same kosher kitchen area as the Passover meals which is a violation of Jewish Dietary Laws (Kashrut Laws) and of "Passover Guidelines" and kosher dietary rules. Id. (See also Exhibits A p.5 para.26,27,27$\frac{1}{2}$, Exh. L para.8.

10). During his employment in the BVCF, the Plaintiff was informed by several "kosher cooks" of violations that the defendants told them to ignore and if asked by health Inspectors during Health Inspections to lie about such action. complaint at pp.6-7; Exh. J para.3 lines 1-5; Exh L para.2,3.

11). During the course of all his complaints and grievances the Plaintiff's kosher meals "began being tampered with." He received half servings, stale bread, and "a soap taste" in his fruit cups. He told Lieutenant Hill about the tampering but did not see any results. complaint at p.7

12). After many complaints and grievances, tampering with his kosher trays, and failure to correct the violations, the Plaintiff suffered a substantial burden on his religious practice, "putting emotional stress and pressure on me to modify my behavior in participating in my kosher meals. [I]t became more than an inconvenience, I was forced to remove myself from the kosher diet program in fear for my health". Id.

## II.  Standard of Review

Summary Judgment is appropriate only if there is no genuine issue of Material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Colotex Corp v. Gatrett, 477 U.S. 317, 322 (1986); Henderson v. Inter-Chem Coal Co., Inc, 41 F.3d 567, 569 (10th Cir.1994). Whether there is a genuine dispute as to a material fact depends

3

upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one sided that one party must prevail as a matter of law. <u>Anderson v. Liberty Lobby,</u> 477 U.S. 242, 248–49 (1986); <u>Stone v. AutoLiv ASP, Inc.,</u> 210 F.3d 1132 (10th Cir.1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. <u>Anderson,</u> 477 at 248. The Court must resolve factual ambiguities against the moving party; thus favoring the right to a trial, <u>Quaker State Minit–Lube, Inc., v. Fireman's Fund Ins. Co.,</u> 52 F.3d 1552, 1577 (10th Cir.1995), <u>Houston v. Nat'l Gen. Ins. Co.,</u> 817 F.2d 83, 85 (10th Cir.1987).

### III.  <u>Argument</u>

**A.  <u>Claim four against defendant Funston for causing the Plaintiff to miss Passover requires that Summary Judgment be denied:</u>**

1).  Defendant alleges that the only remaining claim against Funston is that she failed to place the Plaintiff "on the Messianic Jewish Passover list on March 24, 2012". This is clearly a misrepresentation of the claim. In his complaint, the Plaintiff alleges that Funston is the Religious Coordinator at BVCF, He requested that she place him on the Passover list for April 6, 2012 but she failed to have it on this day, denying his request. He then made another request for Passover for the following month May 6, 2012. She denied this request as well and deliberately made sure that he missed Passover. See complaint p.15, para.5–11; and Magistrate's order p.15, d.

2).  Specifically, the Passover was to take place on April 6, 2012 [FN1], but Funston failed to have it on its proper day. However, she did attempt to

FN1. See Motion for Summary Judgment p.6 para.35; and Funston's Affidavit Exhibit C, para.12.

4

have Passover for the Messianic inmates the following day April 7, 2012, but this is a violation of the Messianic Jewish Law and Plaintiff's constitutional rights. [FN2]. Mr. Aragon then requested to have his Passover the following month on May 6, 2012 of which is authorized by the Messianic Jewish Torah [FN3], but she also denied this request.

3). According to defendant Funston's Affidavit (Exhibit C para.3). She swears that her:

> "responsibilities include processing all offenders request
> for faith changes, affiliations, religious diet changes,
> notifying offenders of upcoming holy day observances as
> well as processing requests made by offenders wanting to
> participate in their faith group's holy day observances."

She failed to adhere to her prescribed duties and thereby violated Plaintiff's First Amendment right to practice his religion.

4). Furthermore, this Court has previously found that Funston is a state actor and that sufficient allegations have been made to state a claim for the purpose of 42 U.S.C. §1983. See Magistrate's order p.15 d.

**B. Claim three against defendant Butterfield for "order[ing]" and "personally participat[ing] in the alleged violation" requires that Summary Judgment be denied:**

1). In his Affidavit and Summary Judgment motion's "Statement of fact" Butterfield admits he knows the Plaintiff, that Plaintiff worked as a cook in BVCF's kitchen, and that he is familiar with the claims against him. Butterfield's Affidavit Exhibit D p.2 para.4 and 7. Butterfield generally avers that he, at all times relevant to this action, "Oversees" the "preparation" of the "kosher [food] area" as a "manager." Id.pp.1,2 para.3,10. and summary judgment motion ("motion") p.3 para.3 para.7. He further avers that

---

FN2. See plaintiff's Declaration exhibit A p.1 para.1, 3,and 4.

FN3. Jewish Torah authorizes second Passover for the following month only. See King James Bible § Numbers 9: 9-14; and Plaintiff's Declaration Exhibit A p.2, para.7.

as a "manager" the "kosher diet at the BVCF ... is prepared in kosher meal preparation areas in accordance with the CDOC policies, guidelines, and menu for kosher food." (motion p.3 para.8); (Exh. D p.3 para.13). That BVCF's "kosher preparation area is well set up and meets Scroll K guidelines." (underlines added)(Motion p.3 para.10). That the cooking of kosher meals is "minimized". (Id. para.11). And, that "[t]he food items are prepared in a room that is used for kosher food preparation." (Id. para.13). And, that he purchases all the food used for preparation of kosher meals. (Id. p.2 para.4) (Exh. D p.1 para.3).

   2). Butterfield also testifies that he was made aware of the constitutional (kosher) violations shortly after Mr. Aragon started his employment at Buena Vista Correctional Facility kitchen [FN4] (Exh. D p.2 para.8), but;

> "At no time did I authorize individuals working in the kosher area to prepare Mr. Aragon's passover meals, ... in the kosher area with no special preparation, cleaning of the area, or cleaning of the equipment." (Exh. D p.2 para.9)

   3). Butterfield testifies that Scroll K Rabbis do surprise inspections of the kosher kitchen he manages to "ensure that the kosher food is prepared correctly". (Exhibit D p.3 para.14), and the Rabbi "found that the kosher food preparation was satisfactory on November 13, 2012; February 6, 2013; [and] June 5, 2013 [.]" He supports his position with selective positive reviews from the Scroll K Rabbi, that are attached to his Affidavit as exhibits. The one for October 2013 is outside the time frame of this case, thus irrelevant. The other three Plaintiff affirmatively objects to. These reviews are also questionable since the responding Rabbi is a defendant in this lawsuit.

---

FN4. August 2011. and Exhibit A pp.3,4. para.3, and 13.

4). Nonetheless, and contrary to the three reviews and Butterfield's Affidavit, the same Rabbi (Hillel Erlanger) issued negative reviews for March 20, 2013; and May 17, 2012. These negative reviews which are relevant to the time window of this lawsuit and disputed facts, clearly note that BVCF "kosher food preparation" kitchen was not following the Scroll K. guidelines; that the kosher program was unsatisfactory; and there were multiple violations being committed.

5). According to the three Scroll K review reports, that Butterfield left out of his motion for summary judgment, they provide the following evidence impeaching Butterfield's sworn to testimony:

Exhibit E states:

> "27. Are the Scroll K guidelines for kosher food preparation being followed at [Buena Vista Correctional] facility?" The answer is "NO"
> "29. Is the kosher program satisfactory?" The answer is "NO"

See "coment" § on Exhibit.

Exhibit F states:

> "27. Are the Scroll K guidelines for kosher food preparation being followed at [Buena Vista Correctional] facility?" The answer is "NO"
> "29. Is the kosher program satisfactory?" the answer is "NO"

See "comment" § on Exhibit.

Exhibit N states:

> "27. Are the Scroll K guidelines for kosher food preparation being followed at [Buena Vista Correctional] facility?" The answer is "NO"
> "29. Is the kosher program satisfactory?" The answer is "NO"

See "coment" § on Exhibit.

6).  In his Complaint, Mr. Aragon alleges that Butterfield was "in charge of everything kosher and food related."  Beginning August 2011 Plaintiff brought the violations to the attention of Butterfield and Butterfield stated that he was not doing anything wrong.  Plaintiff further alleges that it was obvious that the kitchen staff was not trained in keeping kosher rules and guidelines, and that staff claimed they were following Butterfield's orders.  Finally, Plaintiff alleges in the complaint that from April 2012 to August 2013, Butterfield authorized staff to prepare the Plaintiff's Passover meals in the kosher kitchen with no special preparation, cleaning of the area and cleaning of the equipment to meet kosher requirements, and Butterfield authorized the use of the janitorial sink for kosher use and authorized non-kosher foods for consumption in kosher meals.  See Magistrate's order pp.14 through 15 c: "these allegations are sufficient to state a plausible claim that Butterfield ordered the alleged violations and, therefore, personally participated in the alleged vilations."

7).  Plaintiff incorporates by reference his attached Declaration Exhibit A; and Robinson's Affidavit Exhibit J; and Labato's Declaration Exhibit K; and Barnett's Declaration Exhibit L; and McMillian's Affidavit Exhibit M.

8).  Furthermore, this Court has previously found that Butterfield is a state actor and that sufficient allegations have been made to state a claim for the purpose of 42 U.S.C. §1983.  See Magistrate's order p.15 d.

**C.  <u>Because defendant Butterfield and Funston failed to request summary judgment for the alleged kosher violations between August 2011 and April 2012 they have waived any right to bring the claim:</u>**

1). In his Complaint the Plaintiff avers that the kosher violations began in August of 2011, and due to these kosher violations he was denied his First Amendment right to practice his religion. (See Plaintiff's Declaration Exhibit A, pp. 3-4. para.3 and 13. And complaint p.13 para.5

2). Consequently, defendant's motion for summary judgment does not address this period of time, and, defendants waived bringing this claim of summary judgment for this period of time and this Court need not consider whether summary judgment is appropriate between August 2011 and April 2012.

**D.  Plaintiff does have standing to sue defendants for the time period between April 2012 and August 2013:**

1). Notwithstanding the above, of which is incorporated in this part III Section D, defendants erroneously allege in their motion for summary judgment that "because Plaintiff had canceled his [alleged] kosher diet and did not have it reinstated for approximately two years, he has no standing to assert alleged violations relating to the preparation of the kosher meals because he was not, and could not, receive the meals," Defendant's allegations are misplaced, and depend on whether Plaintiff's action of removing himself from the danger of the BVCF's kosher meals was "voluntary". Plaintiff asserts his action was not voluntary. See Exhibit A p.6 para.31.

2). First, it should be noted that during and between the period of time of April 2012 and August 2013 Plaintiff was housed in the BVCF.

3). According to applicable case law, in order for a plaintiff to have standing to sue, the complaint must allege: (1) The existence of an "injury in fact," this requires actual or threatened imminent injury to a legally protected interest: (2) the occurrence of the injury to the plaintiff himself rather than to someone else; and (3) The injury is "fairly traceable" to the

defendant's actions or inactions.

4). Contrary to defendant's allegations, the record before this Court contains ample evidence demonstrating that all three requirements are present in this case. In his Complaint, Plaintiff alleges that Butterfield was "in charge of everything kosher and food related." He stipulates in his affidavit that he is manager (exh.D,p.2 para.10), and he purchases all kosher food for the BVCF. (Exh. D, p.1 para.3)  Beginning August 2011 Plaintiff brought the kosher violations to the attention of Butterfield (Exh. D p.2 para.8) and Butterfield stated that he was not doing anything wrong.  Butterfield in his Affidavit stipulates that the kosher violations began August 2011.  (Id.). Plaintiff further alleges that it was obvious that the kitchen staff was not trained in keeping kosher rules and guidelines, and that staff claimed they were following Butterfield's orders.  Finally, Plaintiff alleges in the complaint that from April 2012 to August 2013, Butterfield authorized staff to prepare the Plaintiff's Passover meals in the kosher kitchen with no special preparation, cleaning of the area and cleaning of the equipment to meet kosher requirements, and Butterfield authorized the use of the janitorial sink for kosher use and authorized non-kosher foods for consumption in kosher meals.  See Magistrate's order pp.14 through 15c: "These allegations are sufficient to state a plausible claim that Butterfield ordered the alleged violations and, therefore, personally participated in the alleged violations."

5). "Kosher laws govern not only the ingredients (both animal and vegetable), but the source, storage, and preparation of these ingredients, and the service of meals." Beerheide v. Suthers, 286 F.3d 1179, at 1187 (10th Cir. 2002).  The facts are that prison staff knew which kosher meals were made or would be made particularly for the Plaintiff, his name was on them, and that these meals were being tampered with by the staff.  (See Plaintiff Declartion

p.6 para.30). This forced the Plaintiff to remove himself from the kosher meals, that were not kosher anyway because of the ongoing kosher violations, and tampering.  Id.  To continue with receiving the mock kosher meals, the Plaintiff feared for his health emotionally and physically of which was in imminent danger if he continued with the mock kosher meals See § E, para.5. receiving the randomly given meals, staff did not know which meal Plaintiff would receive and this eliminated the imminent risk of receiving the tampered with mock kosher meals.  Furthermore, in order for Plaintiff to receive a regular inmate meal he was forced to sign the kosher diet cancellation form because inmates must scan their inmate identification cards when picking up their meal trays and his ID card would show a kosher diet until this was done. (See Defendant's Motion, at Exhibit A-1, attachment 1).

    6).  Defendant Butterfield does not contest the claim that he is accused of using non-kosher food in kosher meals.  Nowhere could the Plaintiff find in Butterfield's motion or affidavit that he contest this claim.  As such, he has waived it.  In the declaration of William Barnett (Exh.L, p.1 para.6) he states: "There were times when we would run out of fruit, and I was short on my trays, Mr. Butterfield would have me use non-kosher label food and fruit cans to complete my kosher trays." In Robertson's Affidavit (Exh.J, para.3, lines 20-21) he states: "[T]hat he was given non-kosher can foods to use in preparing kosher diet meals." In Plaintiff's Declaration (Exh.A, p.4, para.22) he states: Butterfield was intentionally serving me non-kosher food."

    7).  Therefore, the mere fact that the Plaintiff was forced to remove himself from the danger of the mock kosher meals at the BVCF does not establish the lack of injury in fact and lack of standing to sue did not exist during this time.  Nor did the fact that Plaintiff was not on the kosher meal list disqualify him from participating and observing all the other Messianic Jewish

Holy days throughout the year.

E.  **Plaintiff's complaint, his declaration's, and the record evidence sufficiently states a claim for damages:**

1).  Plaintiff first incorporates all parts and subsection of this Response/Brief into this part III subsection E as though fully set forth herein.

2).  Damages are available for violations of §1983 "to compensate persons for injuries caused by the deprivation of constitutional rights," Carey v. Pipus, 435 U.S. 747, 754 (1978).

3).  In Part II of defendant's motion for summary judgment, defendant's contend that Plaintiff has failed to state a claim for damages. (See def's Motion p.11).  They advance two arguments in support of their claim: (1) Because Plaintiff ultimately refused to consume anymore food from the BVCF's kosher kitchen he lacked sincerity for his religion: and/or (2) in the alternative, the record evidence proves the kosher food was "satisfactory" ... "during the time period in question." (def's motion pp.12-15.  Both arguments fail, and appear to mislead the Court.

4).  Defendant's actions and inactions caused the Plaintiff to suffer a substantial burden on the practice of his religion.  The record evidences that upon arrival at the Colorado Department of Corrections Plaintiff properly requested a kosher diet and was approved, and he has been a Messianic Jewish Believer for 17 years (See Exhibit A p.6, para.32, and complaint p.4 para.1). While working in BVCF's kitchen, beginning August 2011, Plaintiff began witnessing defendants committing numerous kosher violations [FN5] rendering the kosher meals served at the BVCF non-kosher, or rather, mock kosher meals..

---

FN5. Plaintiff's Declaration Exhibit A p.2, B. para.1 and p.3 para.3.

5).  After complaining about the violations, he began getting tampered with mock kosher meals, and upon consumption Plaintiff tasted soap in the food, the food portions were small, the bread was stale, and it was making the Plaintiff ill.  (See Exh. A, p.6,para.30).  Because of this, Plaintiff was not receiving adequate nutrition from the mock kosher meals of which declined his overall quality of life.  As such, he was forced to chose between continuing with eating the tampered with mock kosher meals, starve, or modify his faith practice and sign a religious cancellation form so he could receive regular meals. [FN6]  Abdulhaseeb v. Calbone 600 F.3d 1301, 210 U.S. App. Lexis 6861

6).  Furthermore, according to pertinent case law, whether religious belief's are sincerely held can rarely be determined on summary judgment because: "plaintiff's religious belief is almost exclusively a credibility assessment[.]" Mosier v. Maynard, 937 F.2d 1521, 1526 (10th Cir.1991); United States v. Seeger, 380 U.S. 163, 186 (1965).

7).  In regards to defendant's "alternative" argument, the record evidence is clear.  By virtue of the Scroll K's negative kosher inspections (Exh. E,F,N ) page 7 of this Response/Brief, the complaint, Plaintiff's declaration, and Plaintiff's witnesses declarations and affidavits (Exhibit's A,J,K,L,M), defendant Butterfield knew the kosher meals Plaintiff was receiving were non-kosher.  Because as manager of the BVCF kosher kitchen he received the negative inspections for March 20, 2012 (Exh.E); May 17, 2012 (Exh.F); and October 2, 2013 (Exh.N) as well as the positive inspections he used in his affidavit for his motion for summary judgment.  (See defendant's motion Exhibit. A-1, attachments 3,4,5,6).

---

FN 6. Because inmates are required to scan their inmate identification (ID) cards to receive a food tray, and because when Plaintiff scanned his ID card it registered as a kosher diet, in order for him to receive a regular inmate meal he was forced to sign a kosher cancellation form. Exhibit A p.6 para.31.

8). According to the record, it appears though Butterfield, through his attorney, and in order to obtain summary judgment, fails to disclose and attempts to deceive this Court by intentionally picking out the negative Scroll K review reports and asserting in his Affidavit that he was not doing anything wrong. Yet, contrary to Butterfield's sworn to Affidavit, Exhibit E and F clearly show that Butterfield received these review reports, his name is on both, and they show he was running the kosher kitchen in violation of Scroll K Guidelines, Kashrut Laws, and Plaintiff's First Amendment rights, during the times relevant to this lawsuit.

9). In regards to defendant Funston and this subsection, Plaintiff stands on the argument in Part III subsection A, and all other parts of this Response/ Brief. He also submits that nowhere in the record does Funston or Butterfield contest the fact that the Passover is an essential part of his faith tenet practice. (See Exhibit A para.33).

10). Furthermore, rather than reiterate all the content of Plaintiff's declaration, by reference thereto, he incorporates it into this part III subsection E as though fully set forth herein, And, Plaintiff submits that his declaration clearly shows he was and is sincere about his religious belief.

**F. Defendants Funston and Butterfield are not entitled to Qualified Immunity:**

U.S. Constitution Amendment I. "It is well-settled that '[i]nmates ... retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." Kay v. Bemis, 550 F.3d 1214, 1218 (10th Cir.2007). (quoting O'lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).

14

A prisoners right to a diet consistent with his religious beliefs is clearly established in the Tenth Circuit, Makin v. Colorado Dep't of Corr., 183 F.3d 1205, 1210 n.4 (10th Cir.1999).

The right to a diet that complies with kosher dietary requirements of the Tenets of Orthodox Judaism is recognized in the Tenth Circuit. Beerheide v. Suthers, 286, F.3d 1179 (10th Cir.2002).  Kosher laws govern not only the ingredients (both animal and vegetable), but the source, storage, and preparation of those ingredients, and the service of meals.  Id. at 1187.

Accordingly, the record demonstrates that Plaintiff was substantially burdened of his right to free exercise of his religion.  See Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir.2007).

The Supreme Court has defined a "substantial burden" in the context of the Free Exercise Clause as one that "put[s] a substantial pressure on an adherent to modify his behavior and to violate his beliefs [.]"  Thomas v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 718 (1981).

Defendants forced Plaintiff to chose between continuing with eating the tampered with mock kosher meals, starve, or modify and violate his faith practice and sign a religious cancellation form so he could receive regular inmate meals, for which constitutes a "Hobson's Choice" between options that are mutually unacceptable to his practice of his religious faith as a Messianic Jewish Believer.  Abdulhaseeb v. Calbone 600 F.3d 1301, 210 U.S. App. Lexis 6861.

Therefore, the defendants knew or should have known their actions and/or inactions violated clearly established law and Plaintiff's First Amendment right to practice his religion.  Thus, Butterfield and Funston do not have Qualified Immunity and this argument should be denied.

**G.** **Plaintiff's Statement of Disputed Facts that preclude Summary Judgment and are genuine issues of material fact. Defendant's statement of facts are inaccurate and the following disputed facts prevent Summary Judgment:**

**a. Funston:**

1). Whether Funston failed to properly process Plaintiff's request to participate and keep his holy day observance of Passover, and whether this action or inaction violated Plaintiff's first Amendment right to practice his religion. Affidavit of Funston (Exhibit C) and Motion for Summary Judgment (motion) p.5 para.27

2). Whether Funston "deliberately made sure" Plaintiff missed his Passover and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion. Exhibit C para.16.

3). Whether Funston on April 3, 2013 provided a special event proposal which outlined the times and locations the observances were to take place as well as a list of offenders who would be participating was distributed to all housing units at BVCF, as well as Master Control and Shift Commander, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion. motion p.7 para.37 and Exhibit C para.14.

4). Whether Funston denied Plaintiff's ability to participate in the Passover of April 6, 2012 and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion. Exhibit C para.15 and motion p.5 para.27

**b. Butterfield:**

1). Whether Butterfield is personally involved in the preparation of kosher meals. motion p.3 para.7 and Affidavit of Butterfield (Exhibit D) p.2 para.10

2).  Whether Butterfield authorized the preparation of Passover meals in the kosher kitchen without first preparing and cleaning the area for Passover as required by CDOC Passover Guidelines, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion.  Exhibit D p.2 para.9

3).  Whether Butterfield authorized the use of the janitorial sink for kosher use, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion.  Exhibit D.2 para.12

4).  Whether Butterfield authorized the use of a non kosher sink in preparing kosher meals, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion.  Id.

5).  Whether Butterfield authorized and/or ordered the use of hot water for the kosher meals to be supplied from a non kosher source, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion.

6).  Whether Butterfield authorized the preparation of Passover meals and non Passover meals to be prepared in the same preparation area in violation of Kashrut Law and CDOC Passover Guidelines, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion.

7).  Whether Butterfield failed to take corrective action and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion.

8).  Whether Butterfield authorized the use of the non kosher can opener to be used continuously to open kosher cans, or vice versa, and other non kosher utensils and/or equipment in the kosher kitchen to prepare kosher

foods, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion.

9). Whether Butterfield as Supervisor and Manager of the kosher kitchen failed to properly train his inmate cooks and BVCF kitchen staff in proper kosher and Passover guidelines, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion.

c. General:

1). Whether the kosher diet at BVCF was prepared in a kosher meal preparation area in accordance with the CDOC policies, guidelines and menu for kosher food. And whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion. motion p.3 para.8 and Exhibit D p.3 para.13

2). Whether kosher food at BVCF was prepared in kosher meal preparation areas, and whether this action and/or inaction violated Plaintiff's First Amendment right to practice his religion. motion p.3 para.10 and Exhibit D p.3 para.13

3). Whether the BVCF kosher preparation area is well set up and meets Scroll K guidelines. motion p.3 para.10

4). Whether the kosher food sent to BVCF was prepared under guidelines that minimize the need for cooking. motion p.3 para.11

5). Whether all kosher entress are purchased and delivered as prepared. motion p.3 para.12 and Exhibit D p.2 para.11

6). Whether Erlanger's surprise inspections of BVCF kosher kitchen on November 13, 2012, February 6, 2013, June 5, 2013 and October 7, 2013, properly found that the kosher food preparation was satisfactory. motion p.4 para.15 and Exhibit D p.3 para.15

7). Whether Plaintiff ever stated that his Passover meals were fine. motion for summary judgment p.5 para.26

8). Whether if as a result of the inspection, Rabbi Erlanger made recommended changes and whether Butterfield conjunction with others ensured  that changes were made effective.  Exhibit D p.3 para.16

9). These disputed facts in this subsection G apply during and between August 2011 and August 2013.

## IV.  Conclusion

Anything left out, that Plaintiff has not specifically covered in this Response/Brief concerning defendant's Motion for Summary Judgment, the Plaintiff affirmatively objects to for the purpose of exhaustion. For all the reasons stated herein, the Plaintiff Respectfully ask the Court to deny defendants Summary Judgment.


Respectfully submitted this __24__ day of April 2015.


Ruben Aragon


## Certificate of Service

I certify that I have placed a copy of this Response/Brief in the AVCF mail on this 24 day of April 2015. Addressed to:

Chris W. Alber Assistant Attorney General. 1300 Broadway 10th Floor Denver, Co 80203.
Pitler and Associates P.C. 1800 E Bethany Drive Suite 250 Aurora, Co 80014.

IN THE UNITED STATES DISTRICT COURT      Exhibit A
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-01726

Ruben Aragon
Plaintiff.

v.

HILLEL ERLANGER, et al.,
DEFENDANTS
                    Declaration of Ruben Aragon

_____

    I Ruben Aragon, having personal knowledge of the matters set forth herein,
declare that the following is true and correct depose and state:

        I am the Plaintiff in the above mentioned case, I make this declaration
in opposition to defendant Butterfield and Funston's Motion for Summary Judgment
on my claim concerning the violation of my First Amendment right to practice my
Religion.

        Defendants Butterfield and Funston are not entitled to summary judgment
because there are genuine issues of material fact to be resolved. These issues
are identified in the accompanying statement of disputed factual issues filed
by the Plaintiff in his Response/Brief, pursuant to Fed. R. Civ. P. 56 the facts
are set out in this declaration.

    A. **DEFENDANT FUNSTON:**

    1). My Religion (Messianic Jewish Faith) requires that I keep the Holy Days
prescribed in Leviticus Chapter 23 on the exact date prescribed, and to maintain
a kosher diet. We receive blessings from Yahweh if we obey and curses if we
disobey.

    2). In the year 2012 the Passover for the Messianic Jewish inmates was April
6. The Jewish Torah (the law) by which we abide is translated in English in the
King James Bible. In Leviticus Chapter 23 verse 5 The Passover is listed as one
of the Holy Days, it has instructions of when we MUST observe it. We must observe
it on that date, we may not deviate from our scriptures and the commandments.

3). The Passover was to be held on April 6, 2012 at Buena Vista Correctional Facility. (BVCF). Funston's Affidavit C para. 12 and Motion for Summary Judgment p.6 para.35.

4). The Passover was not held on April 6, 2012 and defendant Funston attempted to have the Messianic Believers at BVCF hold their Passover with the Jewish inmates on April 7, 2012. This is a violation of our faith tenet practice and of the Colorado Department of Corrections (DOC) Passover Guidelines. "Due to the major fundamental differences in faith tenets, the Jewish and Messianic Jewish groups [can] not celebrate Passover together". See Exhibit G-3 II.

5). Since the Passover was not held on April 6, 2012 I submitted a request to defendant Funston on April 7th 2012 and requested to be allowed to keep my Passover on May 6, 2012. This request was ignored.

6). After 8 days of no response to my request I submitted a Institutional grievance on April 16th 2012 and provided the necessary information notifying defendant Funston of my constitutional rights being violated.

7). There is a provision in the Torah that authorizes for a second Passover to be observed. Defendant Funston violated my first Passover on April 6, 2012 by not holding it on its proper day. I requested to be allowed to keep my Passover on May 6, 2012 according to Numbers Chapter 9:9-14, she denied this request, and did not process my request according to her responsibilities. Exhibit C para.3 "[M]y responsibilities ... processing requests made by offenders wanting to participate in their faith group's holy day observances". Therefore, she violated my Constitutional right to practice my Religion under the First Amendment.

**B. DEFENDANT BUTTERFIELD:**

In July 2011 I was employed at the Buena Vista Correctional Facility (BVCF) kitchen, my employment lasted approximately 3 years. At all times relevant to this case I observed the following:

1). During my employment I observed various kosher and health care violations which amounted to constitutional violations of my faith tenet practice. These violations were being committed by the BVCF kitchen staff. They are set forth in my attached "Response/Brief"., The BVCF staff was FOLLOWING Butterfield's orders

2). I brought these Constitutional violations to the attention of all the

BVCF kitchen staff.  They told me that Sergeant Butterfield was in charge of everything kosher related.

3).  I immediately brought these constitutional violations to the attention of Butterfield, as early as August 2011.  Butterield told me that he was not doing anything wrong.

4).  The kosher cooks were using a non kosher can opener.  I pointed this out to defendant Butterfield.  I told him that it was a serious violation.  He later gave me Exhibits G-1 and G-2 attached to my Amended complaint (complaint).  See also Exhibit J para.3 lines 6-8.  Exhibit K para.1.  Exhibit L p.1 para.4.

5).  In August of 2011, after several complaints defendant Butterfield told me that everything that was being done in the kosher kitchen was approved and authorized by a Jewish Rabbi and that the Rabbi personally Certified the kosher kitchen for operations.  He then gave me his name and address and phone number, listed at the top of Exhibit G-1. complaint

6).  I was told by Captain Edmonds that Rabbi Erlanger was hired by the Colorado Department of Corrections (DOC) to oversee and make sure the kosher kitchen was in compliance with all kosher laws, rules, and regulations.  Rabbi Erlanger's Attorney's also confirm this in his Motion to Dismiss.  Exhibt I lines 7-8.

7).  I requested for months to be allowed to speak to the Rabbi who inspected and certified the kosher kitchen, but my requests were ignored.

8).  I was finally granted a meeting on June 20th 2012 with defendants Rabbi Erlanger and Edmonds.  Exhibit B-5 complaint.

9).  We discussed all the constitutional violations that are set forth in my "Response/Brief," It was agreed by the defendants that the violations were occurring, they promised me they would cease and be corrected. See Exhibit H-4 lines 3-5. Erlanger's Interrogatories.

10).  The violations would cease for a while, a week or two then resume again.  Shortly after our meeting they resumed. See Exhibit K para.2  Declaration of Eddie Labato.

11).  I filed numerous institutional complaints and grievances trying to resolve the constant constitutional violations to no avail.

12).  I observed that no BVCF kitchen staff was trained or knew anything about kosher rules, laws, regulations, or guidelines.

13). I complained about the constitutional violation as early as August of 2011, and they never actually corrected or cease to stop committing them through out my employment at the BVCF kitchen.

14). In July of 2012 the BVCF kitchen staff ordered me and other inmates to supply the hot water for the kosher meals from the non kosher kettle in the main kitchen. Rabbi Erlanger stated in our meeting that this could not be done. And confirmed it in his interrogatories Exhibit H-5 para.12 and Answer: Also Exhibit K para.2 DOC staff said they were following Butterfield's orders.

15). I observed that during the Passover, every morning the kosher cooks would bring out the kosher eggs and vegetables and cook and steam them in the same ovens with non kosher foods in direct violation of Passover Guidelines. Exhibit G-7 B. and Exhibit L p. 1 para.6.a.

16). I observed that there is no hot water supply source in the kosher kitchen No place to boil water for the kosher meals. See Exhibit H-3, H-4, para.9.a and Answer A. Also Exhibit J para. 3 lines 10-12, and Exhibit K para. 2, Exhibit L para.5 All confirm this to be true.

17). I observed that there are no proper sinks in the kosher kitchen, except for a small hand washing sink. there is no proper place to wash and sanitize kosher fruits, vegetables or kosher utensils and equipment. Rabbi Erlanger also confirms this. See Exhibit H-4 b. and Answer B. also Exhibit L para.3

18). During my employment I observed on many occasions that the kosher utensils, equipment , fruits and vegetables were being washed in the warehouse janitorial sink. See Exhibit J para.3 lines 1-4. Exhibit K para.3, and Exhibit L para. 3.

19). A kosher cook told me that another inmate urinated in the janitorial sink. I filed an institutional grievance on this incident.

20). There is only one microwave in the kosher kitchen and on many occassions I observed that it was being used for non kosher items. This violates Kashrut Laws, and Passover Guidelines. Exhibit L 6.a and Exhibit G-9 J.

21). I never stated that my kosher or Passover meals were fine, had I done so I would not have continued to complain and file grievances about the constant violations through out the year of 2012 and 2013. (def's motion p.5 para. 26).

22)). After being informed by a kosher cook that non kosher fruit was being served in kosher meals, (pineapple), I personally inspected the label on the pineapple cans in the warehouse and confirmed that it was not kosher. Butterfield was intentionally serving me non kosher foods. See Exhibit J, para.3 lines 20-21 Exhibit L p.1 para.6.

4

23). It is required by our Religion to remove all chometz (leaven) from our homes and/or living areas (cells) and to meticulously clean our kitchen to get rid of all chometz before Passover to insure a Chometz free zone. Even special cooking utensils and equipment for Passover use "only" must be utilized. See Exhibit G-5 IX A. and B.

24). DOC is also required to take these measures as outlined in the CDOC Passover Guidelines for the Department. FOOD PREPARATIONS: ..."During Passover, food preparation MUST be done in an area free of chometz." Exhibit G-7 XV.

25). During Passover the eating of chometz is forbidden even food that contains only a trace of chometz is prohibited. Exhibit G-5 IX A.

26). During the Passover of April 2012 I observed that the kosher kitchen was not thoroughly cleaned, in fact no special cleaning was performed to ensure a chometz free zone. And the kosher cooks also confirm this. Exhibit K. para. 4 and Exhibit L,p.2 para.8

27). I observed that the Passover meals were being prepared in the same preparation area as the    kosher meals. This is a direct violation of Jewish Kashrut Law and Passover Guidelines. See Exhibit G-9 J. Exhibit H-6 14a. and Answer A:, and Exhibit L, p.2 para.8

27½). During the Passover of 2012 and the Passover of 2013 I observed that there was no special cleaning of the BVCF kosher kitchen to prepare for Passover meals. This is a serious violation of kashrut laws and Passover guidelines. And there was no other place set aside or another area used to prepare the Passover meals. See Exhibit J para.3 lines 12-16. Exhibit K. para.4, and Exhibit L, p.2 para.8

28). I also observed that I and other Inmates were complaining and filing grievances about these violations occurring during this time frame and yet Rabbi Erlanger would not do a surprise inspection on the BVCF kosher kitchen

29). I was transferred from BVCF on January 10th 2014, and I arrived at Arkansas Valley Correctional Facility on January 15 2014. I was placed in unit 6 orientation for approximately 14 days. Upon placement in the general population I immediately reported to the Chaplains Office and submitted a request to be placed on my kosher meals. As I was no longer in fear for my health and safety, or in fear that my kosher meals were being tampered with. See Exhibit B.

30).   I was forced to chose between a mock kosher meal that was being tampered with (the meals had my name on them), and they were not being prepared according to my faith tenet practice, because of all the kosher violations.  Upon consumption of the mock kosher meals, I tasted soap, the food portions were small, the bread was stale, and it was making me ill. I often experienced stomach cramps and sometimes vomiting.  I was not receiving adequate nutrition and this declined my overall quality of life.  I feared for my health emotionally and physically, of which was in imminent danger if I continued to eat the mock kosher meals.

31).   In order to receive a regular meal I was required to scan my inmate I.D. which would register as kosher only.  Therefore, in order to get a regular meal I was required to sign a cancellation form for kosher meals, which was not voluntarily done by me.

32).   " I'm a Messianic Jewish Believer"[.]  I am very sincere about my Religion, I've been practicing the Messianic Faith for over (17) seventeen years, since 1998.  "In the Messianic Faith we adhere to the kosher Dietary laws of the TORAH and implement them into our everyday walk of life as part of our Faith practice [.]" (Plaintiff's) complaint Section C. "Nature of the Case". pp.4, 7, para.2.  and Exhibit O.

33).   My Religion also requires that I maintain a kosher diet, and keep the Passover and the other Holy Days as proscribed.  They are central to my Faith tenet practice.

34).   Upon arrival at CDOC in March of 2011.  I immediately requested a kosher diet.  complaint p.4 para.1.

## C.   EXHIBITS:

I Ruben Aragon being of lawful age, depose and state as follows: I am the Plaintiff in the above referenced case and have personal knowledge regarding the matters stated herein.

1).   A true and correct copy of Plaintiff Ruben Aragon's Declaration submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibit A.

2).   A true and correct copy of AR form 1550-06 CDOC RELIGIOUS DIET PARTICIPATION AGREEMENT. submitted in opposition to Butterfield and Funston's Motion for Summary Judgment. marked as Exhibit B.

3).   A true and correct copy of Affidavit of RHONDA FUNSTON submitted in opposition to Butterfield and Funston's Motion for Summary Judgment. marked as Exhibit C.

4).   A true and correct copy of Affidavit of Mitchell Butterfield submitted in opposition to Butterfield and Funston's Motion for Summary Judgment. marked as Exhibit D.

5). A true and correct copy of Scroll K/and DOC Facility Review Report submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibit E.

6). A true and correct copy of Scroll K/ and DOC Facility Review Report submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibits, F. and N.

7). A true and correct copy of Colorado Department of Correction Passover Guidelines (2012) pages 2,3,4, and 7-12. Submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibits G through G-9.

8). A true and correct copy of Rabbi HILLEL ERLANGER'S Interrogatory Responses submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibits H through H-6.

9). A true and correct copy of HILLEL ERLANGER'S Motion to Dismiss cover page submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibit I.

10). A true and correct copy of Affidavit of Robert Wayne Robinson submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibit J.

11). A true and correct copy of Declaration of Eddie Labato submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibit K.

12). A true and correct copy of Declaration of William Barnett submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibit L.

13). A true and correct copy of Affidavit of Charles J. McMillian submitted in opposition to Butterfield and Funston's Motion for Summary Judgment marked as Exhibit M.

14). A true and correct copy of Baptismal Letter from Elder Ronald C.Davis marked as Exhibit O. submitted in opposition to Summary Judgment. From Y.N.C.A.

Done this 24 day of April 2015.

Further Affiant Sayeth Not
pursuant to U.S.C. §1746.

_Ruben Aragon_
Affiant Ruben Aragon

*Exhibit B*

AR Form 1550-06A (04/01/10)

## COLORADO DEPARTMENT OF CORRECTIONS
### RELIGIOUS DIET PARTICIPATION AGREEMENT

I, _Ruben Aragon   153477_____, at _Arkansas Valley Correctional Facility_
      (Print Name and Number)                                    (Name
                                     of Facility)

would like to participate in the Religious Diet Program. I understand that in order for me to be served a religious diet special foods may have to be procured for me and special preparation practices must be used; therefore, I agree to abide by the following conditions:

A. I understand that I may change my religion and corresponding religious diet no more than once every twelve months.

B. I understand that if I voluntarily request that my religious diet be canceled, I must do so in writing and I must wait for a period of twelve months before requesting that my diet be reinstated or requesting a new religious diet.

C. During meals I will eat and possess on my food tray only those food items served as a part of the Religious Diet Program.

D. I will not purchase, possess, or consume any food items that are not permitted under my religious diet. I understand that my canteen purchases will be routinely monitored.

E. I will not eat foods from the general diet that are not served to me as part of my religious diet.

F. I will follow all facility policies for dining in my facility.

G. I will not provide all or portions of my specially prepared meal to other offenders.

H. I will not collect religious food items (other than canteen items) in my cell.

I. I understand that should I violate one of the provisions in paragraphs C, D, or E, I will receive one written warning, but will be allowed to continue to participate in the Religious Diet Program.

J. I further understand that should I violate one of the provisions in paragraphs C, D, or E, a second time within a twelve month period, I will be terminated from the Religious Diet Program for a period of twelve months from the date of termination from the Religious Diet Program.

K. I understand that should I violate one of the provisions in paragraphs F, G, or H, I will be prosecuted for violation of the Code of Penal Discipline.

By my signature below, I acknowledge that I have read and/or discussed with a DOC employee or contract worker the contents of this agreement. I further agree that if permitted to participate in the Religious Diet Program I will abide by the conditions of participation set forth above in this agreement.

Offender Signature: _[signature]_            Date: _1-31-14_

Case Manager: _[signature]_               Date: _1/31/2014_

DISTRIBUTION:   FOOD SERVICE PROGRAM OFFICE
                      OFFENDER DEPARTMENT FILE
                      OFFENDER WORKING FILE
                      OFFENDER

Attachment "A"
Page 2 of 2

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01726-RBJ-BNB

RUBEN ARAGON,

Plaintiff,

v.

ROSSKAMM ERLANGER,
MITCHELL BUTTERFIELD, and
RHONDA FUNSTON,

Defendants.

## AFFIDAVIT OF RHONDA FUNSTON

I, Rhonda Funston, upon being duly sworn under oath, of lawful age, and having personal knowledge of the matters set forth herein, depose and state as follows:

1.     I am currently employed with the Colorado Department of Corrections and have been for approximately 28 years.

2.     I am currently the Volunteer Coordinator at the Buena Vista Correctional Facility. I started in this position on March 1, 2012.

3.     As the Volunteer Coordinator, my responsibilities include processing all offenders' requests for faith change affiliation, religious diet changes, notifying offenders of upcoming holy day observances as well as processing requests made by offenders wanting to participate in their faith group's holy day observances. I also provide offenders with a monthly schedule for all faith group and volunteer programs.

4.      I am familiar with Ruben Aragon and am familiar with the claim made against me.

5.      The Colorado Department of Corrections has a Passover 2012 guide which provides and overview of Passover and a calendar of events. *See* Attachment 1.

6.      The Passover 2012 guide also explains that "due to the length of time needed to order kosher and Passover foods, planning must begin a minimum of 120 days in advance." *Id.* at 3.

7.      Thus, Jewish and Messianic Jewish inmates will be notified via sign up letter or other means approximately 90 business days prior to the start of Passover to sign up if they want to participate. *Id.* at 4-5.

8.      Offenders who wanted to participate in the 2012 Passover, which was April, 2012 needed to sign up by November 30, 2011. *Id.* at 5.

9.      The participation list was then submitted to Food Service Office at CDOC Headquarters no later than December 5, 2011. *Id.*

10.     The participation list is then entered into the CDOC's computer system and then sent to the Volunteer Coordinator at each facility for review. *Id.*

11.     On November 8, 2011, Mr. Aragon submitted an Offender Communication form to the Volunteer Coordinator at that time, requesting that he be placed on the list for Passover/Seder meals for 2012. *See* Attachment 2.

2

12.     Mr. Aragon, on December 5, 2011, was sent a response indicating that he has been placed on the list to participate in the Passover and Seder observances beginning on April 6. *Id*.

13.     Mr. Aragon was placed on the participation list for the 2012 Passover and Seder observances. *See* Passover Participation List 2012, attached hereto as Attachment 3.

14.     On April 3, 2012, I provided a special event proposal which outlined the times and locations the observance were to take place as well as the list of offenders who would be participating was distributed to all of the housing units at both facilities within the Buena Vista Correctional Complex as well as Master Control and Shift Commander. *See* Attachment 4. Mr. Aragon was on that list of those offenders who would be participating in the observances. *Id*.

15.     I did not deny Mr. Aragon's ability to participate in the 2012 Passover observance, as alleged. As noted above, he had made a timely request to be placed on the participation list and in fact, was placed on the list.

16.     I also took no action to make sure that he missed Passover.

3

*Exhibit D*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01726-RBJ-BNB

RUBEN ARAGON,

Plaintiff,

v.

ROSSKAMM ERLANGER,
MITCHELL BUTTERFIELD, and
RHONDA FUNSTON,

Defendants.

## AFFIDAVIT OF J. MITCHELL BUTTERFIELD

I, J. Mitchell Butterfield, upon being duly sworn under oath, of lawful age, and having personal knowledge of the matters set forth herein, depose and state as follows:

1.      I am currently employed with the Colorado Department of Corrections and have been for approximately 14 years.

2.      I am currently the Food Service Commissary and Purchasing Supervisor at the Buena Vista Correctional Facility. I have been in position since approximately 2007. I was in this position at all times relevant to this action.

3.      My general duties and responsibilities include the purchasing of food for the entire Buena Vista Correctional Complex, including the kosher food. I also oversee the purchasing, preparation, and delivery of the kosher area. I further work with the business office, support service manager, and the warden to assist in the facility's budget.



4.      I am familiar with Ruben Aragon and am familiar with the claims made against me.

5.      I have reviewed the records accessible to me concerning Mr. Aragon.

6.      On February 29, 2012, Mr. Aragon, requested that his religious diet be cancelled, effective immediately. *See* Religious Diet Cancellation Request, attached hereto as Attachment 1.

7.      I recall that Mr. Aragon was a cook in the regular kitchen.

8.      While I don't recall specifically any complaints Mr. Aragon brought to my attention regarding food preparation in the kosher area, I do know that when Mr. Aragon brought his complaints to my attention, I mentioned to him that I would look into it.

9.      At no time did I authorize individuals working in the kosher area to prepare Mr. Aragon's Passover meal, or any other offender's Passover meal, in the kosher area with no special preparation, cleaning of the area, or cleaning of the equipment.

10.     While I manage the kosher area and order the kosher food for the facility, I am not personally involved in the preparation of kosher meals.

11.     All of the kosher entrees are purchased and delivered as pre-prepared entrees.

12.     Within the kosher area, individuals preparing kosher meals use a sink that is exclusively used for kosher use. At no time did I authorize the use of a non-kosher sink for use in preparing kosher meals.

2



13.     The kosher diet at the BVCF, as in all facilities, is prepared in kosher meal preparation areas in accordance with the CDOC policies, guidelines, and menus for kosher food. These guidelines, policies, and menus were developed in consultation with Scroll K, a non-profit agency that provides consulting services to the CDOC concerning the kosher diet. *See* Kosher Meal Program Guidelines, attached hereto as Attachment 2.

14.     A rabbi from Scroll K conducts surprise inspections of the kitchens at the BVCF to ensure that the kosher food is prepared correctly.

15.     A rabbi from Scroll K conducted a surprise inspection of the BVCF's kitchen on November 13, 2012, February 6, 2013, June 5, 2013, and October 17, 2013, and found that the kosher food preparation was satisfactory. *See* Attachment 3, Inspection dated November 13, 2012 by Scroll K; Attachment 4, Inspection dated November 13, 2012 by Scroll K; Attachment 5, Inspection dated November 13, 2012 by Scroll K; Attachment 6, Inspection dated November 13, 2012 by Scroll K.

16.     If, as a result of the inspections, the rabbi makes recommended changes, I, in conjunction with others, ensure that the changes are made effective.

17.     Mr. Aragon also met with Rabbit Erlanger and Captain Edmonds on June 20, 2012 to discuss Mr. Aragon's questions and concerns. *See* Memorandum dated 6/20/2012, attached hereto as Attachment 7.

18.     Rabbi Erlanger not only talked to Mr. Aragon, but also provided written answers to the questions posed by Mr. Aragon. *Id.*

Exhibit E

במ"ד

 **The Scroll K/Vaad Hakashrus of Denver**

1350 Vrain Street, Denver, CO 80204
Office: (303) 595-9349 Fax: (303) 629-5159
www.scrollk.org

## DOC Facility Review Report

Facility __BVCF__ Date _3/20/12_

Page 1 of 2

1. Number of inmates on the kosher diet _22_
2. Name of Officer who accompanied the Rabbi during this visit _Sgt Butterfield, Cpt Edmonds
3. Name of Rabbi who reviewed the kosher program: _Rabbi Erlanger__
4. Who is doing the kosher food preparations? _Inmates Gross, Griffin
5. Is the person doing the kosher food preparations on the kosher diet? Yes ___ No _x__
6. Have inmates on the kosher diet expressed concerns regarding the kosher status of the meals? Yes __ No _x_ If yes, note the concerns on the back of this report.
7. Are the food preparations done in a designated area that is safe from compromising the kosher status? Yes _x_ No ____
8. Is the table being covered with two layers of covering prior to beginning food preparations? Yes __No _x,see#1_
9. Are they using a disposable cup or utensil to dish out the Cottage Cheese? Yes __ No _x,see#2
10. Are the Eggs being cooked in a portable steamer used exclusively for kosher foods? Yes _x_ No _
11. Are the eggs for the Shabbos and work restricted holidays cooked before sundown on Friday/before the holidays? Yes _x_ No _
12. Is the lunch meat served in the sealed packages? Yes _x_ No __
13. Are the baked potatoes and yams being cooked exclusively in the kosher microwave? Yes _ x,see#3 No _
14. Are the beans <u>prepared and being kept warm</u> in an acceptable manner? Yes _x No __
15. Is the coffee <u>prepared and being kept warm</u> in an acceptable manner? Yes _x_ No __
16. Is the oatmeal <u>prepared and being kept warm</u> in an acceptable manner? Yes _x_ No __
17. Is the rice <u>prepared and being kept warm</u> in an acceptable manner? Yes __ No _x,see#4
18. Is the following equipment available exclusively for kosher use? Are they properly secured when they are not in use?

    a) Can opener          Yes _x_ No __
    b) Cutting board       Yes _x_ No __
    c) Dish tub            Yes _ No _x
    d) Hot water container Yes _x_ No __
    e) Knives/chopper      Yes _x_ No __
    f) Microwavable container Yes _x_ No __
    g) Microwave           Yes _x_ No __
    h) Serving utensils    Yes _x_ No __
    i) Table top steamer   Yes _x_ No __
    j) Thermometer         Yes _x_ No __

19. Are all heated items double wrapped? Yes _ No _x, see#3,#4
20. Where is the equipment washed? _special sink_who washes the equipment? Inmates Gross, Griffin
21. Is the staff at this facility aware that they may contact the Scroll K for any question they may have related to the kosher diet? Yes _x_ No ____

## The Scroll K/Vaad Hakashrus of Denver

**K**

1350 Vrain Street, Denver, CO 80204
Office: (303) 595-9349 Fax: (303) 629-5159
www.scrollk.org

בס"ד

### DOC Facility Review Report

Facility __BVCF__ Date _3/20/12_

Page 2 of 2

22. Do the following items bear acceptable kosher certification? Yes _x_ No ___
23. Are the items that are required to be Parve, available exclusively as Parve? Yes _x_ No _x_

| | | | |
|---|---|---|---|
| a) Bread Parve | Yes _x_ No __ | l) Margarine Parve | Yes _x_ No __ |
| b) Canned Kidney Beans | Yes _x_ No __ | m) Mayonnaise | Yes___ No n/a |
| c) Canned Pinto Beans | Yes _x_ No _ | n) Muffins | Yes _x_ No __ |
| d) Canned veget Beans | Yes _x_ No __ | o) Mustard | Yes_x_ No __ |
| e) Cereal, cold | Yes _x_ No __ | p) Peanut Butter | Yes_x_ No __ |
| f) Cottage Cheese | Yes _x_ No __ | q) Potato Chips | Yes _x_ No __ |
| g) Crackers Parve | Yes n/a _ No __ | r) Salad Dressing Parve | Yes _x_ No __ |
| h) French Dressing Parve | Yes _x_ No __ | s) Shelf stable Entrees | Yes _x_ No __ |
| i) Italian Dressing Parve | Yes _x_ No __ | t) Tuna fish | Yes _x_ No __ |
| j) Jelly | Yes _x_ No __ | u) Veggie Burger | Yes x_ No __ |
| k) Lunch Meats | Yes _x_ No __ | | |

24. Is there an adequate supply of the products listed above for the number of inmates in this facility? Yes _x_ No ___
25. Are all varieties of fresh and canned fruits and vegetables used for the kosher diet, listed on the approved list, on the bottom of the menu? Yes _x_ No ____
26. Check some of the prepared meals to assure that all items are in compliance with the kosher guidelines. Try to check a meat meal to verify that it does not contain any dairy items. Were the meals in compliance with the kosher guidelines? Yes _x _ No __
27. Are the Scroll K guidelines for kosher food preparations being followed at this facility? Yes _ No _x_
28. Ask one or two inmates on the kosher diet if they have any concerns regarding the kosher status of the kosher meals. Note: names, DOC # and concern if any. **No inmates were available**
29. Is the kosher program satisfactory? Yes _ No _x

Comments:

1. Table was covered with 1 piece of plastic folded over. I told them that the 2 layers must be 2 separate pieces of plastic. 1 piece of plastic that is folded over is considered only 1 piece.
2. They use a scoop from the kosher cabinet. It then gets washed in the tub for sanitizing and washing utensils. They use only a styrofoam cup to portion out the cottage cheese.
3. Potatoes and yams are cooked in the microwave, in a bowl of water. Then they are put in the warmer without being double wrapped. I told them to double wrap them when put in the warmer box.
4. After rice is cooked in the microwave, it should be cupped out prior to be put into the warmer. The cup with the lit account for 1 layer, then only 1 layer of plastic is needed.

Exhibit F
בס"ד

**The Scroll K/Vaad Hakashrus of Denver**

1350 Vrain Street, Denver, CO 80204
Office: (303) 595-9349 Fax: (303) 629-5159
www.scrollk.org

## DOC Facility Review Report

Facility __BVCF__ Date _5/17/12

Page 1 of 2

1. Number of inmates on the kosher diet _19_
2. Name of Officer who accompanied the Rabbi during this visit _Sgt Butterfield
3. Name of Rabbi who reviewed the kosher program: _Rabbi Erlanger__
4. Who is doing the kosher food preparations? _Inmates Gross, Griffin
5. Is the person doing the kosher food preparations on the kosher diet? Yes ____ No _x__
6. Have inmates on the kosher diet expressed concerns regarding the kosher status of the meals? Yes __ No _x_ If yes, note the concerns on the back of this report.
7. Are the food preparations done in a designated area that is safe from compromising the kosher status? Yes _x_ No ____
8. Is the table being covered with two layers of covering prior to beginning food preparations? Yes _x_ No _
9. Are they using a disposable cup or utensil to dish out the Cottage Cheese? Yes _ No _x,see#1_
10. Are the Eggs being cooked in a portable steamer used exclusively for kosher foods? Yes _x_ No _
11. Are the eggs for the Shabbos and work restricted holidays cooked before sundown on Friday/before the holidays? Yes _x_ No _
12. Is the lunch meat served in the sealed packages? Yes _x_ No __
13. Are the baked potatoes and yams being cooked exclusively in the kosher microwave? Yes _ x No _
14. Are the beans <u>prepared and being kept warm</u> in an acceptable manner? Yes _x No __
15. Is the coffee <u>prepared and being kept warm</u> in an acceptable manner? Yes _x_ No __
16. Is the oatmeal <u>prepared and being kept warm</u> in an acceptable manner? Yes _x_ No __
17. Is the rice <u>prepared and being kept warm</u> in an acceptable manner? Yes _x_ No _
18. Is the following equipment available exclusively for kosher use? Are they properly secured when they are not in use?

    a) Can opener            Yes _x_ No __
    b) Cutting board         Yes _x_ No __
    c) Dish tub              Yes _ No _x
    d) Hot water container   Yes _x_ No __
    e) Knives/chopper        Yes _x_ No __
    f) Microwavable container Yes _x_ No __
    g) Microwave             Yes _x_ No __
    h) Serving utensils      Yes _x_ No __
    i) Table top steamer     Yes _x_ No __
    j) Thermometer           Yes _x_ No __

19. Are all heated items double wrapped? Yes _x_ No _
20. Where is the equipment washed? _special sink_who washes the equipment? **the kosher cooks**
21. Is the staff at this facility aware that they may contact the Scroll K for any question they may have related to the kosher diet? Yes _x_ No ____

CDOC/Aragon 00104



**The Scroll K/Vaad Hakashrus of Denver**          ב"ה

1350 Vrain Street, Denver, CO 80204
Office: (303) 595-9349 Fax: (303) 629-5159
www.scrollk.org

## DOC Facility Review Report

Facility __BVCF__ Date _5/17/12

Page 2 of 2

22. Do the following items bear acceptable kosher certification? Yes _x_ No ___

23. Are the items that are required to be Parve, available exclusively as Parve? Yes _x_ No _

| | | |
|---|---|---|
| a) Bread Parve | Yes _x_ No __ | l) Margarine Parve | Yes _x_ No __ |
| b) Canned Kidney Beans | Yes _x_ No __ | m) Mayonnaise | Yes___ No **n/a** |
| c) Canned Pinto Beans | Yes _x_ No _ | n) Muffins | Yes _x_ No __ |
| d) Canned veget Beans | Yes _x_ No __ | o) Mustard | Yes_x_ No __ |
| e) Cereal, cold | Yes _x_ No __ | p) Peanut Butter | Yes_x_ No __ |
| f) Cottage Cheese | Yes _x_ No __ | q) Potato Chips | Yes _x_ No __ |
| g) Crackers Parve | Yes **n/a** _ No __ | r) Salad Dressing Parve | Yes _x_ No __ |
| h) French Dressing Parve | Yes _x_ No _ | s) Shelf stable Entrees | Yes _x_ No __ |
| i) Italian Dressing Parve | Yes _x_ No __ | t) Tuna fish | Yes _x_ No __ |
| j) Jelly | Yes _x_ No __ | u) Veggie Burger | Yes x_ No __ |
| k) Lunch Meats | Yes _x_ No __ | | |

24. Is there an adequate supply of the products listed above for the number of inmates in this facility? Yes _x_ No ___

25. Are all varieties of fresh and canned fruits and vegetables used for the kosher diet, listed on the approved list, on the bottom of the menu? Yes _x_ No ____

26. Check some of the prepared meals to assure that all items are in compliance with the kosher guidelines. Try to check a meat meal to verify that it does not contain any dairy items. Were the meals in compliance with the kosher guidelines? Yes _x_ No __

27. Are the Scroll K guidelines for kosher food preparations being followed at this facility? Yes _ No _x_

28. Ask one or two inmates on the kosher diet if they have any concerns regarding the kosher status of the kosher meals. Note: names, DOC # and concern if any. **See#2**

29. Is the kosher program satisfactory? Yes _ No _x_

Comments:
1. They use a scoop and wash it in the kosher-use sink. This is not acceptable; they should use a disposable cup or spoon.
2. Inmate Pleasant #123502 said the entrees have sometime an aftertaste (maybe not heated enough?). Also – there is not enough time to get raw vegetables ready to eat. Inmate Diaz #113070 said the same thing about the time to eat the raw vegetables; besides that he is satisfied with the kosher program.

CDOC/Aragon 00105

*Exhibit G*

# COLORADO DEPARTMENT
# OF CORRECTIONS



### PASSOVER 2012
# *April 7 – April 14*

#### *(Updated 11-16-11)*

Version 2012
Updated by

Charleen Crockett
DOC Food Service Operations Manager
(719) 226-4257

Matthew Winden
Manager Office of Faith & Community Programs
(719) 226-4480

With assistance from:
Rabbi Yisroel Rosskamm
Rabbinical Administrator
The Scroll K: Vaad Hakashrus



EXHIBIT
G-G-9

Erlanger000014

6-1

# *TABLE OF CONTENTS*

| | | |
|---|---|---|
| I | Passover Overview & Calendar | 3 |
| II | Jewish vs. Messianic Jewish | 4 |
| III | Participants | 4 |
| IV | Food Donations | 4 |
| V | Work Proscription | 4 |
| VI | Fast of the Firstborn | 5 |
| VII | Services | 5 |
| VIII | Seders | 5 |
| IX | General Passover Food Guidelines | 7 |
| X | Menu | 7 |
| XI | Medical Diet Issues | 7 |
| XII | Purchasing | 7 |
| XIII | Food Storage | 8 |
| XIV | Food Service Inmate Workers | 8 |
| XV | Food Preparation | 8 |
| XVI | Meal Service | 10 |

**PASSOVER OVERVIEW:** Passover, *The Festival of Freedom,* is the most popular and well known of Jewish holy days. This festival recalls the deliverance of the people from slavery

Erlanger000015

G-2

in Egypt. Passover is an eight day observance. During Passover observers are prohibited from possessing, eating or even working with any leavened foods *(chometz)*. Observers have an obligation to eat specially-prepared unleavened matzah and participate in two Seder rituals to recount the Exodus.

Two days before Passover starts there is a ritual search for Chometz which is conducted in the evening. The Fast of the Firstborn is on the day prior to Passover. All firstborn sons or fathers of first-born sons, of Israel may choose to fast. Participants who choose to fast will be provided a sack breakfast to eaten before daybreak the morning before Passover.. Passover begins prior to sundown and the first Seder is held after nightfall. Offenders will place certain items on a special Seder plate. Participants may share a plate. The Seder is conducted communally wherever possible.  During the Seder participants reenact the Exodus from Egypt, reading from the Haggadah. Participants may light electric or regular candles before sunset. A second Seder is held, just like the first, after nightfall on the eve of the second day of Passover. Up to four (4) hours should be allowed for each service. When using electric candles, they should be lit before sunset on the first night of Passover and stay lit until at least after the Seder on the second night. If it was turned off, the Jewish inmates may not relight them for the second Seder since it is a work restricted holiday. If they are lighting candles; they can light them for the second Seder 45 minutes after sunset, from a fire that is already lit, but they may not strike a match or turn on a cigarette lighter on a work restricted holiday.

Due to the length of time needed to order kosher for Passover foods, <u>planning must begin a minimum of 120 days in advance.</u>

---

> ### *The following dates and times apply to the year 2012 only.*

Erlanger000016

**April 5:**
*(Thursday)*   *Search for Chometz,* conducted in the evening.  In the cell, this applies to the personal areas and property of the Passover participants only. Since the participant doesn't technically "own" the cell, it is acceptable for a non-participating cellmate to possess Chometz. A search of Chometz is not required in communal areas used for services or the Seders since these areas and the property contained therein are not owned by the participants.

**April 6:**
*(Friday)*   Fast of Firstborn

**April 6:**
*(Friday)*   *Eve of Passover*
   <   chometz may be eaten in the morning only (until 10:53 AM) in Denver, east of Denver would be a few minutes earlier and west of Denver would be a few minutes later.
   <   Passover begins 18 minutes prior to sunset
   <   First Seder
   <   Work Proscription starts 18 minutes prior to sunset

**April 7:**
*(Saturday)*   *First Day of Passover*
   <   Work Proscription
   <   Second Seder

**April 8:**
*(Sunday)*   *Second Day of Passover*
   <   Work Proscription

**April 9-12:**
*(Mon- Thurs)*   *Intermediate Days of Passover*

**Apr 13-14:**
*(Fri – Sat)*   *Last Two Days Passover*
   <   Work Proscription, both days

**II**   **JEWISH VS. MESSIANIC JEWISH:**  Due to the major, fundamental differences in faith tenets, the Jewish and Messianic Jewish groups will not celebrate Passover together.

**III**   **PARTICIPANTS:** Jewish and Messianic Jewish inmates will be notified via Sign up letter or other means approximately 90 business working days prior to the start of

Erlanger000017

G - 4

for the Seder.  Since items in this area are not the personal property of the inmates, there is no requirement that the participants conduct a formal "search for Chometz" in a common area.  *It is acceptable for participants to observe the Seder in their individual cells. If they observe in their cells, the facility will need to ensure lights are left on long enough for participants to observe the Seder and do the necessary reading.*

C.     **Start Time & Procedure** - The Seder may start at any time but *no earlier than 35 minutes after sunset.  The dinner meal is eaten as part of the Seder observance.*  The Seder observance, which includes consumption of the dinner meal, will take a minimum of one and one half hours in addition to about 20 minutes of set up time prior to the start.

Time should be allowed for a one hour communal gathering in the evening on April 6 and April 7 before the time allotted for the Seder preparations.  Seder start times can be determined by finding the sunset times for your location at **http://www.usno.navy.mil/USNO/astronomical-applications/data-services/rs-one-year-us** and adding 35 minutes.

**Seder Start Times for 2012:**

Denver/Canon City **8:05 PM,** 4-6-12
Denver/Canon City **8:06 PM,** 4-7-12
East, earlier   **6-12 minutes earlier**
West, **3-11 minutes later**

| Seder Dinner Meal Provided by Facility | | Items to be Obtained by Participants |
|---|---|---|
| 12 oz. | Grape Juice | |
| 5 oz | Matzah | Seder Plates[3] |
| 4 oz | Lunch Meat | |
| 1 | Hard Cooked Egg, cold | |
| 1 | Baked Potato, cold | |
| 5 lvs | Romaine Lettuce[1] | |
| 1 | Fresh Fruit or tomato | |
| 3 oz | Walnuts/Almonds | |
| 1 pkt | Horseradish | |
| 1 | Zeroah (served cold in the package) | |
| 1 t. | Charoset[2] | |
| 1 pkt | Non-iodized Salt | |

1. Romaine lettuce is required.  No other types of lettuce or greens may be substituted.  Wash hold up to the light to check for insects.
2. The inmates should be informed they are individually responsible to check their Romaine lettuce to assure that it is free of insects.
3. Recipe below.
4. Seder plates owned by the community may be shared.  In lieu of an actual plate, a drawing or picture will suffice (available at Q:foodsvc_docs/Jewish & Messianic Jewish/Passover/2012.

### RECIPE FOR PASSOVER SEDER CHAROSET

Each recipe makes about 1 ½ cups or 70, one teaspoon size servings.
Each participant will receive one teaspoon for each Seder, April 6 & 7.

1 recipe serves 35 participants

Page 7 of 12

Erlanger000020

G - 5

2 recipes serve 70 participants
3 recipes serve 105 participants
4 recipes serve 140 participants

1 cup of finely chopped apple (peeled)
½ cup of finely chopped walnuts
1 tsp. cinnamon
2 tsp. sugar
Kosher for Passover Grape Juice just to moisten

(FOLLOW KOSHER DIET GUIDELINES FOR FOOD PREPARATION). Chop the nuts and apples to a fine consistency. Sprinkle with sugar and cinnamon and stir. Moisten with grape juice. Charoset is eaten during the Seder and is meant to remind participants of the mortar used by the Jews to build during the period of slavery, therefore the consistency should be like mortar. Serve chilled in small soufflé cups. Keeps three days in refrigerator.

IX   **GENERAL PASSOVER FOOD GUIDELINES:**   In addition to the following Passover restrictions, the usual kosher dietary laws are observed.

A   **Chometz** - During Passover the eating of chometz is forbidden.  Even a food that contains only a trace of chometz is prohibited. Chometz includes all leavened foods and drinks, and ingredients which are made from or contain wheat, rye, barley, oat or spelt. All grain products or admixtures of grain, such as bread, grain vinegar, yeast and malt are forbidden.  Legumes such as beans, corn, peas, green beans, mustard seeds, and their derivatives are also not usually consumed.

B   **Utensils and Service Ware** - In a Jewish home, the kitchen is meticulously cleaned and rid of all chometz prior to Passover and special cooking equipment and service ware are brought out for use only during Passover.  In DOC, care is taken to maintain food items in their original packaging and handle raw foods in an area free of chometz.

C   **Special Matzah** - Unique to Passover is the eating of matzah baked especially for the holiday.  Matzah used all year-round is not acceptable for Passover.

X   **MENU:**  The *Passover Menu - 2012* (attached) is designed to meet the nutritional requirements of the participants.

XI   **MEDICAL DIET ISSUES:**  The Passover menu includes guidelines for inmates with diabetes and some food allergies. The menu may be served to inmates with diabetes and a diabetic snack is included.  Any medical diets that cannot be managed by using the menu must be brought to the attention of a DOC Registered Dietitian who will determine what

Erlanger000021

G-6

accommodations can be made. Medical diet modifications must be reviewed by Rabbi Yisroel Rosskamm who will need a minimum of three weeks before Passover.

**XII   PURCHASING:**

    **A**    **Central Purchases** – For DOC managed facilities (excluding private facilities and Pueblo campus), the Central Food Service Administration Office will order kosher for Passover foods: entrees, lunch meats, kosher cheese, soups, matzah, grape juice, gefilte fish, horseradish, Passover tuna, and macaroons.

    **B**    **Facility Responsibility** - Facility Food Service operations will be responsible for ordering disposable service ware, milk, eggs, produce, nuts, raisins, and honey according to the *Passover Food Ordering Guide* (attached).

        1.    Milk & Eggs:   Milk and eggs can be used without Passover certification but *must be produced prior to Passover.* You must be able to produce documentation indicating these products were produced prior to the start of Passover. One way to do this is to procure these items before Passover.

        2.    Disposable Products:   All meals will be consumed on Styrofoam or plastic products. Participants will need Styrofoam cups and or bowls for preparing the instant food products in their cells. Ensure an ample supply of Styrofoam trays, cups and disposable flatware is on hand.

    **C**    **Deliveries**:   Items procured by the DOC Warehouse will be distributed to each facility as needed using DOC trucks and, if necessary, other shipping methods using dry ice.

**XIII   FOOD STORAGE:**   All kosher for Passover food shall be stored unopened, in its original container and in a secure location. Food items which are not in original packaging, must be stored in such a manner that they do not become contaminated with chometz. All food received should be consumed during the eight days or stored properly for future use by the Food Service Department.

**XIV   FOOD SERVICE INMATE WORKERS:**   Participating observant Jewish and Messianic Jewish inmate food service workers may not eat, possess, or work with foods that are *Chometz* during the entire eight day holiday. Participants should not be required to work in Food Service during Passover but it is acceptable for them to work in the kitchen during the intermediate days of Passover (April 9-12) provided they do not handle foods that are *Chometz*.

Erlanger000022

*G-7*

**XV   FOOD PREPARATION:** Kosher for Passover meals require minimal preparation. Most foods will be kept in their original packaging or in their natural state. *During Passover, food preparation MUST be done in an area free of Chometz. Therefore, a bakery room or area adjacent to a baking area would be inappropriate.*

A.   **Portioning From Bulk Containers:** Some items may need to be individually portioned from a bulk container. Individual portions can be placed into a Styrofoam cup with lid using an unused, clean disposable utensil, or can be wrapped in plastic wrap. Portioning should be done in a clean area, away from direct contact with non-Passover foods on a surface that is double-covered with plastic. The individual doing the portioning should wear fresh, plastic gloves that have been rinsed in cold water. **Pull tab lids on tuna cans will need to be removed and the can double wrapped.**

B.   **Hard Cooked Eggs:** Eggs must be purchased prior to the start of Passover. Eggs should be cooked in a table top steamer that is dedicated for kosher use only. Black and Decker make an inexpensive steamer that is available at stores like Wal-Mart, target or via the Internet at www.blackanddecker.com. Do not remove the shell. Hard cooked eggs for the Sabbath and work proscription days must be cooked the day before and can be served cold. **See items H. below for koshering instructions if the steamer has been used in the past to prepare grain products such as pasta, rice or cereal.**

C.   **Fresh Produce:** All produce served for Passover must be fresh. Canned fruits and vegetables are not to be served. The fruits and vegetables should be washed under running water. Fruits and vegetables may be served raw, uncut, and with peels intact. An alternative would be to cut the fruits and vegetables in accordance with instructions in paragraph A., above and using a knife that has been dedicated to this purpose.

*Care must be taken to ensure fresh produce that is prepared prior to work proscription days remains fresh. If it is covered excessively and not allowed to vent, it will get too ripe. Some solutions include placing the meals in Styrofoam, but not covering the trays in plastic wrap to allow moisture to escape, or placing a paper towel inside the tray to absorb moisture.*

D.   **Canned Goods/Bottles:** See instructions in paragraph A., above.

E.   **Frozen entrees/Potatoes:** Meals are to be left in their original packaging. It is *strongly preferred that the meals/potatoes be double wrapped in two separate pieces of plastic wrap and heated in a microwave oven.* Using this method, **ANY**

Erlanger000023

G - 8

microwave oven may be used.  An alternative (to be used only in an emergency situation) is to double wrap the item in two separate pieces of aluminum foil and bake per package instructions in an oven that has been properly cleaned as outlined in the next paragraph.

**F.** **Non-Microwave Oven preparation:**  *(The use of a microwave oven is strongly preferred.)* For any products that would not be edible raw (e.g. potatoes), a Jewish person **must** light the pilot light on the stove or turn the stove on each time it is used to cook the item(s).

    1.  Double wrap the food items in two separate piece of foil.
    2.  The oven must be cleaned from remaining food and grease.  Particles that are completely burned up are not of concern.
    3.  Turn the oven on to its highest temperature for 1 hour.

**G.** **Microwave preparation:** *If a product to be heated or cooked is double wrapped as stated Item F., above, ANY microwave can be used.*  To prepare a microwave oven for use where the product is not double-wrapped: (This procedure can only be done prior to Passover)

    1.  The microwave should not have been used for the past 24 hours.
    2.  Clean the oven thoroughly.
    3.  Fill a completely clean container that was not used for 24 hours, with water.
    4.  Turn on the microwave and let it steam heavily.
    5.  Turn it off and wipe out the inside with a fresh paper towel.

To use the microwave during Passover, use a flat, thick object as a separation between the bottom of the oven and the cooking dish. When cooking, the food should be covered on all sides and must not touch the side of the microwave.

**H.**  **Steamer preparation:** The steamer should be kashered prior to cooking foods for Passover if it has ever been used for the preparation of grain products such as pasta, rice or cereal.   The following is the kashering procedure: (This procedure can only be done **prior** to Passover)

    1.  The steamer should be cleaned inside and outside.

Erlanger000024

G-9

2. Do not use the steamer to prepare anything chometz (grains) for 24 hours.
3. Fill with water to its normal use level.
4. Let it steam for 15 minutes.

**I.**   **Sabbath & Work Proscription Days:**   On the Sabbath and work proscription days (April 7-8 & 13-14) food may not be cooked or heated. The menu will use lunch meat for the dinner meal in place of a frozen dinner and all foods will be served cold.

**J.**   **Facilities that are serving kosher-for-Passover meals as well as kosher non-Passover meals during Passover must have adequate separate microwaves, steamers, work areas and all necessary utensils since the same equipment can not be used for both Passover and non-Passover meals.**

**XVI**   **MEAL SERVICE:** *Meal service procedures & arrangements are subject to the discretion of the facility warden & will take into account individual facility security and movement procedures.*

**A**   **Service Ware:** Use only disposable plates, trays, bowls, cups and utensils. For Passover, these must be plastic or Styrofoam, **NOT** paper.

**B**   **Dining Location:** During Passover, the dining room is not an appropriate place for meal service due to their being chometz in this area. Passover meals should be consumed by the participants in a communal area, if possible. It is also acceptable for participants to consume meals in their cell. Inmates may cover the toilet with a sheet or towel.

**C**   **Perishable Items:** Perishable items should be consumed within one hour (or the duration of the Seder) of being opened or served. Food items in the meal need to be consumed by the next meal or discarded.

Erlanger000025

Exhibit H

IN THE UNITED STATES DISTRICT COURT, FOR THE DISTRICT OF COLORADO

Civil Action No. 13-CV-01726-RBJ-BNB

RUBEN ARAGON,

Plaintiff,

v.

HILLEL ERLANGER,
GUY EDMONDS, MITCHELL BUTTERFIELD, RHONDA FUNSTON, and
JEFFREY HILL,

Defendants

## HILLEL ERLANGER RESPONSE TO PLAINTIFF'S FIRST SET OF WRITTEN DISCOVERY REQUESTS TO ALL DEFENDANTS

Defendants, Hillel Erlanger (incorrectly named by Plaintiff as Rosskamm Erlanger) ("Erlanger") by and through his attorneys Pitler and Associates, P.C. hereby respectfully submit Erlanger's Response to Plaintiff's First Set of Written Discovery Requests to All Defendants:

### GENERAL OBJECTIONS TO DISCOVERY REQUESTS

The following general objections apply to each and every response below even though they are not restated separately in each response:

1.     Counsel for the answering party objects to the asking party's instructions to the extent that they seek to impose burdens beyond those contemplated by the Colorado Rules of Civil Procedure.

2.     Counsel for the answering party expressly reserves its right to object to the admissibility at trial of any information provided or documents produced in response to these discovery requests.

3.     Defendant objects to the Interrogatories to the extent that it calls for information or documents that are protected by attorney-client privilege or the attorney work product privilege.

4.     Counsel for the answering party expressly reserves its right to modify these responses at a later date if additional information is learned which changes or qualifies these answers.

1

H-1

## INTERROGATORIES

**1A. The nature of your work and duties at Scroll K. Vaad HaKashrus CO.**

**B. The nature of your work and duties for the Department of Corrections at Buena**

**Vista Correctional Facility, in regards to the kosher kitchen?**

Answer: 1A.  As a Kosher food inspector, I go to food manufacturing plants to inspect the ingredients, equipment, and processing to assure that kosher standards are met and maintained. The facilities that are visited are those that the Scroll K certifies.  The factories are subject to close supervision in order to retain their certification.  In addition, caterers, hotels are kosher supervised by special request by either the caterer/hotel or the client.

1). Answer1B. The State of Colorado contracted with Scroll K to provide consultation services to the

2). DOC. This is accomplished by visiting the DOC facilities, speaking to the inmates (if available at the

3). time of the visit) or by special request of the inmate. A report of the visit is sent to the DOC who is the

4). only authority to implement any corrections or special request. The agreement with DOC does not

5). include kosher certification.  The inspections note the condition of the kitchen at the time of the visit.

6). Accordingly the visits to the DOC are to provide constant reminders of the proper methods and

7). processes that have to be followed for the food that is given to inmates to be considered kosher.

8). The kosher program was set up between the DOC Food Services Administration headquarters in

9). Colorado Springs and the Scroll K, and is documented in the kosher guidelines written by DOC in

10). consultation with the Scroll K. These guidelines are available to the cooks to be followed when they

11). prepare the kosher food. Inmates can file complaints using a kite (a DOC form to document inmate

12). complaints). These kites are reviewed. In most cases a suggestion to a resolution is offered to the DOC

13). and or the inmate.

**2. Did you approve for operation as a complete functional kosher kitchen at Buena Vista**

**Correctional Facility? (here after BVCF)**

2

H-2

1  **Answer.** No, we do not have this authority. As explained above, our sole purpose is to guide the DOC

2  on the process and procedure to prepare kosher food products.  I inspect for the purpose of making sure

3  the DOC is following the kosher food preparation guidelines to be able to provide kosher food to its

4  inmates, and then I report my findings to DOC in writing.  The Scroll K has no authority to execute any

5  of the recommendations as set out in the consultation report.  Our function is to give information to the

6  DOC who then will instruct its personnel to correct the issues pointed out in the reports that were

7  provided by the Scroll K.  I do regular inspections of the facilities to determine if the recommendations

8  are being implemented.

cited

**3.  Were you aware that the small and large cooking kettles in the main kitchen were being used
to supply hot water for the kosher meals?**

**Answer** Yes, I was told about the event which occurred before I came for my inspection.  The
condition did not exist when I did my inspection and had been previously remedied, if it in fact actually
existed.  See exhibit B5 #5.

**4. a. Were you aware that the kosher utensils, dishes, equipment, and fruits and vegetables were
being washed in the janitorial sink in the warehouse?**

**b. If yes, when did you become aware and what actions did you take.**

**c. Did you approve this practice?**

**Answer A. Yes.** It was mentioned to me. However, during my inspections I did not see it being done.
Please note that as long as no hazardous products are being used in the sink and the sink is clean, there
is no problem from the kosher aspect.   Thereby, none of the conduct described violates kosher
principles.

4B. The question assumes a fact not in existence at the time I inspected BVCF as there was no evidence
of any kind that such action took place.  We were just told such an event took place.

4C. This action doesn't violate kosher practice, as only cold water is used to properly wash vegetables.

3

*H-3*

**5. a. Were you made aware that the kosher can opener was being exchanged freely to open non-kosher cans in the main kitchen?**

**b. If yes, what steps did you take to correct this problem? (please provide any documentation to corroborate such steps)**

Answer A.  I was told this practice at one time took place.  The can opener from the general kitchen cannot be used for kosher products. Neither may the kosher can opener be used in the general kitchen. See exhibit B5 #7.

Answer B. I was informed about the matter after everything had taken place.  After the can opener for general use broke, the one for kosher food was used.  The DOC contacted the Scroll K who instructed the personnel to wait 24 hours without using the can opener. Then after 24 hours to pour boiling water on the can opener (= kosherization) so it can again be used in the kosher kitchen for kosher food preparation.  I was informed of the situation and it was resolved prior to my visit.

**6. Did you instruct or provide any information to BVCF kitchen staff on how to properly prepare the kosher are for Passover meals and/or for any Jewish Holy days. (If yes please provide any documents or instructions you provided.) If no, why not?**

1), **Answer 6.** <u>The Scroll K does issue specific guidelines to the DOC for the implementation.</u> These

2), guidelines include specific food requirements for Jewish holidays. Rabbi Rosskamm, the Rabbinical

3), Administrator of the Scroll K, conducts every year (March time frame) a Passover seminar at

4), headquarters in Colorado Springs, which is attended by personnel (personally or via Skype) responsible

5), for the kosher food program at each facility.  <u>Those guidelines, including the Passover procedures were</u>

6), established well over 10 years ago and they are being followed properly. Regarding Passover, the

7), inmates need to request Passover food by a deadline given by the DOC. Those that fail to request may

8), not receive the Passover approved food.

9), **Upon your inspections of the kosher kitchen at BVCF did you notice :**

4

H-4

a. there was no hot water source?.

b. that aside from a tiny hand washing sink, there were no sinks in where to wash either equipment or fruits and vegetables?.

c. That it was simply a storage room trying to be converted into a "Kosher Kitchen" and simply being called a kosher kitchen, consisting of just a table top covered with freezer paper?

Answer A. Yes

Answer B. Yes, there were no sinks in the area. The room however was converted to accommodate a proper kosher kitchen

Answer C. It is hard to understand the question.  The room was converted to be used as a kosher kitchen and met the needs for kosher food preparations.

Did you ever meet with Mr. Aragon in regards to the allegations made in this action? If yes, did you promise him these violations would be corrected?

Answer.  Yes, and please see exhibit B5.  Mr. Aragon concerns were reported with my comments to the DOC as shown in my memo to Charlene Crockett.

8. Were you ever made aware of any other complaints or violations being conducted or performed by any person(s) at BVCF (specifically kitchen staff) (for the period of the last ten years from 2004 to the date that you respond to this request.)

Answer: We object to this question as the request is too broad and not relevant to lead to discoverable evidence. Scroll K provides consultation as to having a kosher kitchen and provides unannounced visits to determine if the work and processes are being properly done by the DOC.  The complaints, if any, have been reported to the DOC, with steps for corrections to be applied by the DOC, if needed.  I and the Scroll K have no authority over the execution of any of the suggestions in the consultation reports.

H - 5

**10. Rabbi Hillel Erlanger, a.) If a man carries Holy (sanctified) meat in the fold of his garment and the fold touches , bread, or soup or anything boiled, or any other meat, or oil or wine, do those items become Holy?**

**b.) What about if someone becomes unclean, or defiled, by a dead body or any other uncleanness, what if he touches these items, the bread, the soup, wine, oil, etc. do they become unclean?**

Answer A: Object to question as it is asking for an opinion outside the kosher subject. The question has no relevance to the instant proceeding and will not lead to discoverable evidence. The question I believe that might be the inquiry concerns matters that were relevant in Jewish law more than 1700 years ago but which would not be applicable in the time of the Diaspora.

Answer B: Object for the same reason in 10A. The question is not relevant to this legal proceeding and will not lead to discoverable evidence. The question has nothing to do with kosher issues about food.

**11. Can vegetables and fruits be washed in a janitorial sink, that is also used to dispose of Hazardous chemicals and used for the cleaning of the industrial vacuum cleaner?**

Answer: From a strictly kashrut aspect, nothing in the question would make the food products not kosher, if the sink is perfectly clean. With that said, the use hazardous products that endanger human health violates another Jewish rule of not doing conduct that could endanger the health or life of another human being and the conduct would be prohibited.

**12. Can water heated in the kettle in the general kitchen be used for the kosher diet trays, where other non kosher food is constantly cooked?**

Answer: It is hard to understand what exactly is being asked. A kettle in the general kitchen cannot be used for any kosher purposes

**13. Can the non kosher can opener be used in the kosher kitchen, or vice versa?**

Answer. No, see exhibit B5

6

H-6

**14.a. Can the kosher for Passover meals be prepared in the same area as meals with leaven (like bread with yeast, etc.)**

**b. in fact isn't it critical that all leavening is to be removed from the kosher kitchen by the first High Sabbath of the days of Unleavened Bread.?**

**Answer A:** A regular kosher kitchen cannot be used as a Passover kitchen at the same time. A regular kosher kitchen can be then made suitable for Passover kosher kitchen. At the Passover time the kitchen has to be specially cleaned for Passover food preparation. If the kitchen is a kosher kitchen, and if the proper steps are followed, the kitchen can be used for Passover.

**Answer B:** The words "High Sabbath of the days of unleavened bread" have no meaning. It is critical that grains that will rise when mixed with water must be properly removed prior to the Passover. The food products used during the Passover such as caned products must also be themselves certified as proper for Passover.

**15. If the kitchen is not thoroughly cleaned, can it still be used to prepare the Passover meals?**

**Answer:** Generally speaking the answer is no.

**16. Please answer questions number 9. a.), b.), c.), d.) and number 10. a. and b. of FUNSTONS INTERROGATORIES.**

**9. Describe in detail any investigation you or any party has conducted regarding any of the claims alleged against you in this action, including any materials or documents you have reviewed, or any persons with whom you have spoken, and/or any other research you have performed concerning this complaint. The descriptions shall include:**

    **A. The names of any references on materials you have archived.**

    **B. Computer queries, and search results.**

    **C. Names of persons with whom you have spoken.**

    **D. The results of any such investigations.**

Exhibit  I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01726-RBJ-BNB

RUBEN ARAGON,

Plaintiff,

v.

ROSSKAMM ERLANGER,
GUY EDMONDS, MITCHELL BUTTERFIELD, RHONDA FUNSTON, and
JEFFREY HILL,

Defendants.

---

### MOTION TO DISMISS

---

Defendants, Hillel Erlanger (incorrectly named by Plaintiff as Rosskamm Erlanger) ("Erlanger") by and through his attorneys Pitler and Associates, P.C. hereby respectfully submit Erlanger's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1 and 6), and as grounds therefore, states as follows:

### INTRODUCTION

1). The Plaintiff ("Plaintiff") is an inmate at the State of Colorado facility located in Buena

2). Vista Colorado serving out a sentence for a conviction of a Crime.  Plaintiff in his Complaint

3). alleges he has been requesting to receive kosher food, which can properly be classified as

4). "kosher."  Plaintiff alleges Erlanger "failed to properly inspect and disapprove" how others

5). prepared food that Plaintiff claims was not prepared according to proper kosher standards.  To

6). be kosher correct requires very specific standards that do not allow for any exception, unless to

7). prevent loss of life or serious injury.  Erlanger is a supervising Rabbinic kosher expert hired by

8). the State of Colorado to provide the needed information to allow the State of Colorado to

9). provide kosher food to its prison inmates.  Plaintiff claims Erlanger by providing the proper

*Exhibit J*

## AFFIDAVIT OF ROBERT WAYNE ROBINSON

STATE OF COLORADO)           Civil Action No.  13-cv-01726-BNB
            )S.S
COUNTY OF CHAFFEE )

"Indeed no more than (affidavits) is necessary to make the prima facie case. United States v. Kis 658 F. 2nd, 526 (7th Cir. 1981) Cert Denied 50 US.L.W. 2169 S. Ct. March 22, 1982"

I, Robert Wayne Robinson, herein "Affiant", D.O.C. No. 49082, being first duly sworn, depose, say and declare by my signature that the following facts are true, correct and complete to the best of my knowledge and belief.

1. That, Affiant is competent to state the matters included in his declaration, has personal knowledge of the facts and declared that to the best of his knowledge, that statements made in this affidavit are true, correct and not meant to mislead.

2. That, Affiant on or about October 11, 2011, while employed in the Buena Vista Correctional Complex kitchen as a kosher cook, I personally witnessed and was trained the following practiced pattern of blatant disregard and violations of kosher certification and state health department regulations. Affiant's faith affiliaton is Messianic Jewish and affiant has been unable to practice his religious belief to participate in the facility kosher diet program because of said violations that affiant was trained to practice on a daily basis.

3. That, Affiant was trained to violate kosher and state health department guidelines and regulations by washing kosher food and kosher utensils in a warehouse non-kosher certified sink that is used for janitorial purposes, and to conceal this practice from health department inspectors and kosher certification rabbis during inspections. Furthermore, to use the main kitchen non-kosher certified heavy duty can opener to open kosher food cans when the kosher domestic can opener broke down. Affiant personally witnessed the kosher can opener used to open non-kosher cans in the main prison kitchen. Furthermore, Affiant, personally witnessed water being boiled for service to kosher diet participants meals in the main kitchen small commercial kettle; that for years has been used to cook all types on non-kosher foods. Furthermore, Affiant, asserts that the kosher kitchen is never in compliance with kosher certification guidelines in readying and preparing the kosher kitchen for Passover. Affiant asserts no special effort is implemented by kitchen staff to thoroughly clean the kosher kitchen of chometzs in preparation for Passover. Furthemore, Affiant was trained by kitchen staff and insructed by certification rabbi to wash kosher food in the kosher kichen hand sink. Furthermore, Affiant states that he was given non-kosher can foods to use in preparing kosher diet meals.

*Lines: 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21*

Further Affiant Sayeth Naught

Dated this _17th_ day of _June_ 2013      *Robert Wayne Robinson*
                                             Robert Wayne Robinson

County of Chaffee )
State of Colorado )  )SS      ACKNOWLEDGEMENT
Witness my hand and Seal      Subscribed & acknowledged before me this
My Commission expires ___11-24-13___      _17_ day of _June_, 20 _13_

                                         *Celia Schwartz*
                                               Notary

CELIA SCHWARTZ
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID # 19864020443
MY COMMISSION EXPIRES NOVEMBER 24, 2013

Exhibit K

**AFFIDAVIT**
**DECLARATION OF EDDIE LOBATO**
Under Penalty of Perjury 28 U.S.C. §1746:

Civil Action No. <u>13-cv-01726-BNB</u>

My name is Eddie Lobato D.O.C. #150824, I would like to state that I am competent to make this declaration and having personal knowledge of the matters stated therein hereby declare:

1. While being employed in the B.V.C.F. kitchen, I witnessed the meal coordinator, Sgt. Martin bring the kosher can opener to the main kitchen and use it to open all the non-kosher cans. This was after being told not to by Sgt. Peros and by Sgt. Stromer. After the use of the can opener, Sgt. Martin did not attempt to clean the tool, she simply returned it to the kosher kitchen. The following day, Sgt. Martin took the cans back into the kosher kitchen to be opened and then returned them to the cooks in the main kitchen. This occured during the month of May 2012.

2. On July 23, 2012, kitchen staff started having employees use hot water for the kosher meals that came directly from the small kettle located in the main kitchen. This command came after being told not to do such a thing.

3. I witnessed on several occasions, kosher cooks washing fruit in the janitorial sink located in the warehouse.

4. During my employment in the B.V.C.F. kitchen, I witnessed during the Jewish Holy Days of Passover that there was no attempt to prepare a place special enough to make Passover meals in the kosher kitchen or in other areas of the warehouse.

5. I witnessed on several occasions the kosher coolers being washed in the pots and pans area of the main kitchen.

6. On several occasions, the veggie-prep room in where I worked, the sinks there were being used to wash vegetables and fruits and then put into kosher meals.

I know and can testify to all the above mentioned statements. My job was to retrieve all the supplies for the veggie-prep room which come from the warehouse which goes through the kosher kitchen.

Pursuant to U.S.C.§1746 , I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 8th day of July 2013

_Eddie Lobato_
EDDIE LOBATO

DECLARATION OF WILLIAM BARNETT          *Exhibit L*
UNDER PENALTY OF PERJURY 28 U.S.C.§ 1746

I William Barnett D.O.C.No. 138043 hereby declare by my signature
that the following statements made in this declaration are true
and correct to the best of my knowledge and belief. I am competent
to make the statements contained herein.

1. I was employed at the Buena Vista Correctional Facility
from 2009 through 2011, as a kosher cook. I was never trained
to be a kosher cook in regards to any kosher rules or regulations
or any guidelines. I was simply instructed by Sgt. Butterfield.
My Immediate supervisor was Sgt. Butterfield and occassionally
Cat. Edmonds and Lt. Hill.

2. during my employment I personally witnessed a blatant disregard
for state health department regulations, or kosher regulations.

3. I was instructed to wash kosher produce and the kosher utensils
and equipment in the warehouse janitorial sink, as there were
no sinks in the kosher kitchen, and if asked to keep this practice
from the health department insectors.

4. I was instructed to use the heavy duty can opener in the
main kitchen area to open all my kosher food cans, during my
employment there was no kosher only heavy duty can opener.


5. Aside from a small glass coffee pot, designated for the staff,
there is no hot water source in the kosher kitchen, so I was
instructed to supply all the hot water for the kosher meals
from the small kettle in the main kitchen.

6. There were times when we would run out of fruit, and I was
short on my trays, Mr. Butterfield would have me use non-kosher
labeled food and fruit cans to complete my kosher meal trays.

6.a.
The eggs for the kosher meals were steamed in the main kitchen
industrial ovens, and we only have the one microwave which was
shared by all.

Exhibit L

7. I was instructed to wash kosher fruits and vegetables in
the kosher kitchen hand sink by the Rabbi who inspects the
kosher kitchen.

8. during my employment as a kosher cook at B.V.C.F. there
was never a special effort made, nor a special seperate place
or area prepared for passover meals. the kosher kitchen was
never thoroughly cleaned for the jewish holy day celebrations,
I personally prepared all kosher meals in the same area in
the kosher kitchen..


Pursuant to **28 u.s.c §1746: I declare and verify under**
 **penalty of perjury that the foregoing is true and correct.**
executed this 24th day of June 2013.    *William Barnett*

                                         William Barnett

Exhibit M

AFFIDAVIT OF CONFINEMENT

I, Charles J. McMillian, am over the age of eighteen, and make the following affidavit freely of my own knowledge, except for those things which stated upon information and belief, and as to those things, I believe them to be true. If called to testify, I would do so willingly and competently as follows:

1.   While house at the Colorado Department of Corrections (CDOC), Buena Vista Correctional Facility (BVCF), I recieved the Kosher Religious Diet meals from approximately February 2007 to April 2011 until transferred to the Limon Correctional Facility (LCF) where I continue to recieve the kosher meals as it is my belief and stated in Yahuah's Word in the books of Exedus 15:26 and I Corinthians 11:29-30.

2.   While at BVCF I made several compliants concerning the following:

      * not receiving coffee
      * not receiving oatmeal
      * not recieving honey
      * not recieving fresh vegetables
      * not receiving fresh fruit

Of these complaints, after communications with the kitchen staff, the following grievances were filed with satisfactory resolution, as recorded within the CDOC records:

a.   failure to receive specified amount of oatmeal; grievance granted.
b.   failure to receive specified amount of honey; grievance granted.

3.   While at BVCF in 2009-10, I was served canned pineapple which was not kosher certified and stopped it being served as soon as I became aware.

4.   Currently, the CDOC authorizes the use of un-certified kosher canned vegetables.

5.   The "employed" CDOC rabbi continually adjusts his duty to Yahuah by authorizing the use of un-certified kosher products and practices as regulated by Aleph Institute for Kosher Certification.

6.   To date, I have filed one (1) grievance, #R-LF 12/13-37974, concerning CDOC and LCF for the use of un-certified milk products produced at the Juniper Valley Dairy. LCF has discontinued to serve the milk in the un-certified milk container, but now pours that un-certified milk into a metal pitcher (that is washed with the general population's foodware) and pours the milk into styrofoam cup, violating kosher dietary law.

7.   I continue to weekly complain of repeated violations concerning the Kosher Religious Diet meals, weighing the risk of retaliation by staff and inmate kitchen workers that prepare the kosher diet meals.

-page one of two-

Exhibit M

8.   The CDOC, BVCF, and LCF continually reduce the nutritional value of the Kosher Religious Diet, violating and/or depleting the agreement in Beerheide v. Suthers, 286 F.3d 1179 (10th Cir. 2002).

9.   It is my belief that the nutritional value of the Kosher Religious Diet meals are less than that of the general population meals.

I declare under penalty of perjury of the laws of the State of Colorado, that the foregoing is true and correct, and as to those things stated upon information and belief, I believe them to be true.

Executed this 8th day of July, 2013, at the Limon Correctional Facility.

_____

Charles J. McMillian, Affiant
CO - DOC No. 83854

ACKNOWLEDGEMENT

STATE OF COLORADO)
                 ) ss.
COUNTY OF LINCOLN)

Subscribed and sworn before me, on 8th July, 2013, Charles J. McMillian personally appeared before me on the basis to be the person whose name subscribed in the within instrument.

Witness My Hand and Official Seal.

_____

> STEVEN E HEIN
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID # 20134013137
> MY COMMISSION EXPIRES FEBRUARY 28, 2017

NOTARY PUBLIC

My Commission expires ___02/28/2017___

-page two of two-

*Exhibit N*



## The Scroll K/Vaad Hakashrus of Denver
1350 Vrain Street, Denver, CO 80204
Office: (303) 595-9349 Fax: (303) 629-5159
www.scrollk.org

בס"ד

### DOC Facility Review Report

Facility: KCCC_____Date _10/2/13                                        Page 2 of 2

22. Do the following items bear acceptable kosher certification? Yes _ x No _
23. Are the items that are required to be Parve, available exclusively as Parve? Yes x_  No _

| | | | |
|---|---|---|---|
| a) Bread Parve | Yes _x_ No __ | l) Margarine Parve | Yes __ No __ |
| b) Canned Kidney Beans | Yes _x_ No __ | m) Mayonnaise | Yes _x_ No __ |
| c) Canned Pinto Beans | Yes __ No n/a | n) Muffins | Yes _x_ No __ |
| d) Canned veget Beans | Yes out No __ | o) Mustard | Yes _ No n/a |
| e) Cereal, cold | Yes _x_ No __ | p) Peanut Butter | Yes_x_ No __ |
| f) Cottage Cheese | Yes _x_ No __ | q) Potato Chips | Yes _x_ No _ |
| g) Crackers Parve | Yes _x_ No __ | r) Salad Dressing Parve | Yes _x No __ |
| h) French Dressing Parve | Yes __ No n/a | s) Shelf stable Entrees | Yes __ No __ |
| i) Italian Dressing Parve | Yes out No __ | t) Tuna fish | Yes _x__ No __ |
| j) Jelly | Yes _x_ No __ | u) Veggie Burger | Yes out No __ |
| k) Lunch Meats | Yes _x_ No __ | | |

24. Is there an adequate supply of the products listed above for the number of inmates in this facility? Yes _x, the truck with supplies will come on Thursday_  No ___
25. Are all varieties of fresh and canned fruits and vegetables used for the kosher diet, listed on the approved list, on the bottom of the menu? Yes _x_  No ____
26. Check some of the prepared meals to assure that all items are in compliance with the kosher guidelines. Try to check a meat meal to verify that it does not contain any dairy items. Were the meals in compliance with the kosher guidelines? Yes _x_  No ____
27. Are the Scroll K guidelines for kosher food preparations being followed at this facility? Yes _ No _x
28. Ask one or two inmates on the kosher diet if they have any concerns regarding the kosher status of the kosher meals. Note: names, DOC # and concern if any. see#3
29. Is the kosher program satisfactory? Yes __ No _x_

Comments:
1. The surface used for the kosher prep needs to be covered with 2 separate layers of plastic.
2. ███████████████████████████████████████████████████████████
3. Inmates Schumacher #125551 told me that the Chaplain wants to change the time for the Friday evening service (Sabbath) to 5:30 pm, and that would not work in the winter with the candle lighting time. Also, the grape juice used Friday evening is not kosher, as it is a Welch product that has no kosher symbol. A: Rabbi Rosskamm will contact DOC regarding the Friday evening service time.

Erlanger0000129



Exhibit O

# YNCA
# *Yahweh's New Covenant Assembly*

P O Box 50 - Kingdom City, Missouri 65262  - Tel: 573-642-6566  - Fax: 573-642-6360  - www.ynca.com  - E – mail: mail@ynca.com
Publishing: **YNCA  Light** *Magazine*                                    Producing: **YNCA's Back to the Truth** *Telecast*

April 16, 2002
Dear Brother Ruben,

I recently received the list of recently baptized prisoners into Yahweh's New Covenant Assembly, and as the Elder responsible for our Correspondence Department, I want to welcome you into the very body of Yahshua. Recently you have undergone miraculous changes and events in you life. First you were called by Yahweh, you repented of all of your pass sins, began to make desperate changes in your life, sought out baptism and had hands of an Elder laid on you for the transference of the Holy Spirit into you heart and mind. The day of your baptism was the most important day in your entire life, for once Yahweh's Holy Spirit has coupled with your spirit [the spirit of man] you are now a ***begotten son of Elohim***, a new creature in Yahshua the Messiah. As such, you have been chosen by Yahshua to be one of the firstfruits if you qualify in this life.  As one of the firstfruits, you shall help Yahshua to reign in the wonderful world of tomorrow. As a spirit being, you shall assist in Yahshua's government for a thousand years and beyond. I am sure that those there with you rejoiced with you on this very special occasion. Yet, after all the celebration is ended, you come to the realization that you still have a lot of human nature to overcome. The long awaited event of you baptism has now been fulfilled, and yet you are still find yourself fighting against you own evil nature. What went wrong?

The purpose of my letter to you as a newly baptized babe in Yahshua is to address that very question. Turn with me to Matthew chapter four and we will consider what happened to Yahshua after John baptized him:

> *Then was Yahshua led up of the Spirit into the wilderness to be tempted of the devil.*
> *And when he had fasted forty days and forty nights, he was afterward an hungred.*
> *And when the tempter came to him, he said, If thou be the Son of Elohim, command that these stones be made bread.*
> *But he answered and said, It is written, Man shall not live by bread alone, but by every word that proceedeth out of the mouth of Elohim.*
> *Then the devil taketh him up into the holy city, and setteth him on a pinnacle of the temple,*
> *And saith unto him, If thou be the Son of Elohim, cast thyself down: for it is written, He shall give his angels charge concerning thee: and in their hands they shall bear thee up, lest at any time thou dash thy foot against a stone.*
> *Yahshua said unto him, It is written again, Thou shalt not tempt Yahweh thy Elohim.*

*Again, the devil taketh him up into an exceeding high mountain, and sheweth him all the kingdoms of the world, and the glory of them;*
*And saith unto him, All these things will I give thee, if thou wilt fall down and worship me.*
*Then saith Yahshua unto him, Get thee hence, Satan: for it is written, Thou shalt worship Yahweh thy Elohim, and him only shalt thou serve.*
*Then the devil leaveth him, and, behold, angels came and ministered unto him. Matt 4:1-11 (KJV)*

So what is my point you may ask? Well my point is that our savior after his baptism was led into the wilderness to go through forty days of testing. After he had been prepared, who confronted him? Who sought to deceive Yahshua with his lies and trickery? Did you notice what he specifically used to try and trick Yahshua? Yes, it was Satan the Adversary, the prince of darkness who came to temp Yahshua. Yes, Satan twisted the Holy Scriptures to try and persuade Yahshua to sin. When all else failed, Satan was so desperate that he even offered Yahshua his kingdom, this earth, if Yahshua would only bow down and worship him.

Now let me ask you a direct question. Do you think that Satan, that powerful archangel is going to let you just slide into the kingdom without any battle? No! Because you are of the firstfruits, he will use every diabolical scheme at his disposal. One thing for sure, he will not appear sporting a Van Dyke beard, wearing a red suit, and dragging a barbed tail, and carrying a pitchfork. No my friend, he will appear as an angel of light, and he will promise you liberty, yet all the while his purpose will be to put you into bondage to sin and death. He will work on you through your moods, and emotions. He will seek out your weaknesses and exploit them to his advantage. Whatever it takes to win you over, he is willing to give you. If you succumb to his evil ways, and begin to practice sin once again, Yahweh will begin to take away his Holy Spirit from you.. Without Yahweh's Holy Spirit you will be spiritually aborted, and you will not have eternal life dwelling in you. Therefore you are spiritually doomed and will not enter into the kingdom of Elohim.  Then Satan will have won.

However, Satan doesn't have to win. Not if you are fully committed to the vows you made at your baptism. Not if you are focused on your ultimate destiny and have set your will to endure like a good soldier unto the end. Not if you study to show yourself approved, a workman rightly dividing the truth. Not if you have a love of the truth, and hate lies and deceit. Not if you continue to grow in grace and knowledge of Yahshua. Not if you remain in palm of the Father Yahweh's hand.

To conclude then, the choice is really up to you. The days, months, and years ahead well be hard and most difficult at times. If you quit, the promises you now have in the scriptures will fade and leave you forever.  Yet, if you endure as a hardened soldier unto the end, your reward will be great. I wish to personally congratulate you on your recent baptism. Welcome into the very body of Yahshua the Messiah .

*Your fellow soldier in Yahshua,*
*Elder Ronald C. Davis Sr.*